IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GIMAEX HOLDING, INC., | : | |
| Plaintiff, | : | |
| v. | : | C. A. No. 15-515-RGA |
| SPARTAN MOTORS USA, INC., f/k/a CRIMSON FIRE, INC., | : | |
| Defendant, | : | |
| SPARTAN-GIMAEX INNOVATIONS, LLC, | : | |
| Nominal Defendant. | : | |

## REPORT AND RECOMMENDATION

**I.  INTRODUCTION**

On June 19, 2015, Gimaex Holding, Inc. ("Gimaex") filed this action against Spartan Motors USA, Inc. ("Spartan USA") seeking appointment of a liquidating receiver/trustee (Count 1) over Spartan-Gimaex Innovations, LLC (the "Joint Venture" or "Spartan-Gimaex") in which Gimaex and Spartan USA are the sole and equal members and which Gimaex characterizes as a "nominal defendant."[1] Gimaex also seeks damages for conversion (Count II), breach of contract (Count III), breach of implied covenant of good faith and fair dealing (Count IV), and tortious interference with business relations (Count V).[2] Currently before the court is Spartan USA's motion to

---

[1] D.I. 1 at ¶ 1. Gimaex is a Florida corporation with its principal place of business in Florida, and is a 50% member of Spartan-Gimaex. *Id.* at ¶¶ 6-7. Spartan USA is a South Dakota corporation, with its registered office in Pennsylvania, and a principal office in Michigan. *Id.* at ¶ 9. It is the other 50% member of Spartan-Gimaex. *Id.* at ¶ 10. Spartan-Gimaex is a Delaware limited liability company with its principal place of business in Michigan and has a registered agent and registered office in Delaware. *Id.* at ¶ 12.
[2] *Id.* at ¶¶ 124-145.

dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).[3]

## II. BACKGROUND

On or around November 8, 2012, Gimaex and Spartan USA executed a Venture Agreement for Spartan-Gimaex Innovations, LLC ("Agreement") creating Spartan-Gimaex, a joint venture in which Gimaex and Spartan USA each have a 50% ownership interest.[4] Spartan-Gimaex was created to combine the complementary skills, technologies, resources, capabilities, and product portfolios of Gimaex and Spartan to develop, manufacture, and distribute products to domestic and international fire service markets.[5] As a fire apparatus manufacturer, Gimaex was to provide its technology for fire extinguishing systems to Spartan USA to be incorporated in its fire vehicles and market those vehicles in North America, South America, Asia, and Europe.[6]

Under the Agreement, management of Spartan-Gimaex was vested in a board of directors, composed of eight individuals, four of whom were designated by Gimaex and four of whom were designated by Spartan USA ("Board of Directors").[7] The Board of Directors has the sole and exclusive right, power, and authority to conduct, supervise, and manage the business and affairs of Spartan-Gimaex.[8] The Agreement requires Gimaex and Spartan to each "proceed with diligence to provide the services and materials required of them" and support and promote Spartan-Gimaex's projects.[9]

---

[3] D.I. 8.
[4] D.I. 1 at ¶¶ 1, 22; *id.*, Ex. A ("Agreement").
[5] D.I. 16 at 4; D.I. 1 at ¶ 23.
[6] *Id.*
[7] D.I. 1 at ¶ 24; *id.*, Agreement at ¶ 5.01(b); *id.*, Agreement at Ex. A.
[8] *Id.* at ¶ 29; *id.*, Agreement at ¶ 5.01(a).
[9] *Id.* at ¶ 32; *id.*, Agreement at ¶ 3.01(d).

2

Ultimately, Spartan-Gimaex did not achieve any of its goals and did not approach any of its projections for each of its projects.[10] On or around, February 19, 2015, Spartan-Gimaex was dissolved by mutual consent.[11]

Article XII of the Agreement provides procedures for winding up, liquidating, and distributing the assets of Spartan-Gimaex upon dissolution, and authorizes the Board of Directors to take certain actions.[12] Unanimous board approval is required for the Board of Directors to takes those actions.[13] The Agreement provides a procedure for resolving a deadlock prior to dissolution, but does not provide a mechanism for resolving a deadlock among the Board of Directors regarding the wind down process.[14]

Gimaex's complaint alleges the parties are deadlocked regarding how to liquidate Spartan-Gimaex's assets and wind down.[15] Gimaex seeks appointment of a trustee or receiver to resolve the alleged deadlock, liquidate Spartan-Gimaex's assets, and wind down the joint venture.[16] Additionally, Gimaex requests an accounting from Spartan-Gimaex, and direction and approval of the disposition or sale of Spartan-Gimaex's assets in a manner that optimizes their value, with distribution of any proceeds in a manner that complies with the Agreement and Delaware law.[17]

## III. GOVERNING LAW

Spartan USA moves to have the complaint dismissed pursuant to FED. R. CIV. P.

---

[10] *Id.* at ¶ 101.
[11] *Id.* at ¶ 104. Gimaex alleges the agreement to dissolve Spartan-Gimaex was the result of Spartan USA's purported misconduct and violations relating to Spartan-Gimaex, and the Joint Venture failing to achieve any of its projected goals. D.I. 16 at 5.
[12] D.I. 1 at ¶ 97; *id.*, Agreement at ¶ 12.02.
[13] *Id.* at ¶ 30; *id.*, Agreement at ¶ 5.06.
[14] *Id.* at ¶¶ 96, 100.
[15] *Id.* at ¶ 4.
[16] *Id.*
[17] *Id.* at 28 (Prayer for Relief).

12(B)(1).[18]  It argues this court does not have 28 U.S.C. § 1332(a)(1) subject matter jurisdiction because there is a lack of complete diversity of citizenship between Gimaex and Spartan-Gimaex, each being a citizen of Florida.[19]  Also, the fact that Spartan-Gimaex is alleged to have been dissolved does not affect its citizenship.  In *Johnson v. Smithkline Beecham Corp.*, the Third Circuit held a particular dissolved corporation was a nominal party under the facts of that case.[20]  The court noted, however, "[w]e have held that when . . . a state statue renders a dissolved corporation 'sufficiently alive to sue,' the corporation also retains its citizenship for purposes of diversity."[21]  Here, it is alleged Spartan-Gimaex was dissolved on or around February 19, 2015.[22]  The Delaware state statute concerning the winding up of a limited liability company provides:

> Upon dissolution of a limited liability company and until the filing of a certificate of cancellation as provided in § 18-203 of this title, the persons winding up the limited liability company's affairs may, in the name of, and for and on behalf of, the limited liability company, *prosecute and defend suits*, whether civil, criminal or administrative . . . .[23]

Therefore, despite the dissolution of Spartan-Gimaex, it is sufficiently alive to sue and retains its citizenship for purposes of diversity.

---

[18] D.I. 9 at 1; FED. R. CIV. P. 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion:  (1) lack of subject-matter jurisdiction . . . .").

[19] D.I. 9 at 1.  There is no dispute as to whether Spartan-Gimaex is a citizen of Florida.  *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of its members."); *In re PMTS Liquidating Corp.*, 490 B.R. 174, 184 (D. Del. 2013) ("For purposes of determining diversity of citizenship, the citizenship of an LLC is equivalent to all the states where its members are domiciled . . . .") (citing *Zambelli*, 592 F.3d at 420).  The dispute is whether the Joint Venture is a real party in interest.

[20] 724 F.3d 337, 358-59 (3d Cir. 2013).

[21] *Id.* at 359 (citing *Stentor Elec. Mfg. Co. v. Klaxon Co.*, 115 F.2d 268, 271 (3d Cir. 1940), *rev'd on other grounds*, 313 U.S. 487 (1941)).  As further support, the Third Circuit cited *Ripalda v. Am. Operations Corp.*, 977 F.2d 1464, 1468 (D.C. Cir. 1992) ("[A] state statue extending the life of a dissolved corporation for the purpose of being sued also preserves the corporation as a citizen of the state of incorporation for the purpose of determining diversity of citizenship.").

[22] D.I. 1 at ¶ 104.

[23] 6 Del. C. § 18-803 (emphasis added).

When jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.[24] Pursuant to 28 U.S.C. § 1332(a)(1): "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and coasts, and is between–(1) citizens of different States . . . ."[25] "'[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff.'"[26] Nevertheless, "'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'"[27] "Nominal parties are generally those without a real interest in the litigation."[28] "Typically, they are those 'named to satisfy state pleading rules . . . joined only as [the] designated performer of a ministerial act . . . or [who] otherwise ha[ve] no control of, impact on, or stake in the controversy.'"[29] "Stated differently, a nominal party is one who does not have an enforceable right or duty under substantive law."[30]

Whether Spartan-Gimaex is a real party in interest "turns on whether plaintiff's . . . claims are direct or derivative."[31] The issue of whether a claim is direct or derivative "must turn solely on the following questions: (1) who suffered the alleged harm (the

---

[24] *See Carpet Group Int'l. v. Oriental Rug Importers Ass'n., Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).
[25] 28 U.S.C. § 1332(a)(1). The court notes there is no argument that "the matter in controversy exceeds the sum or value of $75,000" requirement is not met.
[26] *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991) (alteration and emphasis in original) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)).
[27] *Id.* (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).
[28] *Id.* (citing *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985)).
[29] *Weston v. Progressive Commercial Holdings, Inc.*, C.A. No. 10-980, 2011 WL 231709, at *2 (D. Del. Jan. 24, 2011) (alterations and omission in original) (quoting *Lincoln Property v. Roche*, 546 U.S. 81, 92 (2005)).
[30] *Id.* (citing Wm. Moore et al., Moore's Federal Practice § 102.15 (3d ed. 2010)).
[31] *Polak v. Kobayashi*, C.A. No 05-330-JJF, 2008 WL 4905519, at *7 (D. Del. Nov. 13, 2008) ("*Polak II*") (citing *Ross v. Bernhard*, 396 U.S. 531, 538 (1970))

corporation or the suing shareholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[32] "A direct claim seeks relief for injuries that fall distinctly upon the individual participants in the business association or involve the participants' contractual rights."[33] "On the other hand, a derivative claim states injury against and seeks relief for a business association as a whole. Any relief flowing to the association's participants as individuals only comes to them indirectly, but the way of their pro-rata stake in the association."[34]

## IV. DISCUSSION

Under the terms of the Agreement, the parties agreed "to submit to the exclusive jurisdiction and venue of the United States District Court, District of Delaware, in connection with any claim or controversy arising out of this Agreement," and if this court would not accept jurisdiction, then the jurisdiction of the Delaware Court of Chancery.[35] Gimaex maintains, therefore, its choice of this forum was dictated by the Agreement.[36] The parties' Agreement, however, cannot vest this court with subject matter jurisdiction

---

[32] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).
[33] *In re Cencom Cable Income Partners*, No. C.A. 14634, 2000 WL 130629, at *3 (Del. Ch. Jan. 27, 2000).
[34] *Id.*
[35] D.I. 16 at 3; D.I. 1, Agreement at ¶ 13.09.
[36] D.I. 16 at 3. Even though Gimaex insists this court has jurisdiction over this matter, it explains that, on July 27, 2015, prior to filing its motion to dismiss, Gimaex sought an agreement from Spartan USA for the transfer of its claims to the Delaware Court of Chancery. On July 29, 2015, Gimaex provided a draft stipulation for Spartan USA's review. Spartan USA would not agree to the stipulation. *Id.* at 3. Spartan USA states that because the proposed stipulation included, *inter alia*, mischaracterizations of contested facts and allegations in the complaint, it would not agree to the stipulation. D.I. 22 at 1-2. Spartan USA also notes no stipulation was necessary for Gimaex to voluntarily dismiss its claims pursuant to FED. R. CIV. P. 41(a)(1)(A). *Id.* at 1.

over Gimaex's claims.[37] It is whether Spartan-Gimaex is a nominal defendant, the sole ground upon which Spartan USA bases its motion to dismiss, that determines whether this court has subject matter jurisdiction.

Gimaex contends Spartan-Gimaex is not a real party in interest and, thus, is a nominal defendant whose citizenship is not considered in determining diversity jurisdiction.[38] It argues a review of the asserted claims and actual interest of the parties in those claims supports its position.[39] In addition to arguing Spartan-Gimaex is a nominal party with respect to Count I, Gimaex further insists Counts II-V are direct, not derivative, claims as Spartan USA suggests, again establishing that Spartan-Gimaex is a nominal party.[40]

In determining whether diversity of citizenship exists, "a court must first identify the primary issue in controversy and then determine whether there is a real dispute by opposing parties over that issue."[41] "[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy."[42] "Thus, a federal court must disregard nominal or formal parties,"[43] and the court can base its

---

[37] *See, e.g.*, *Bd. of Educ. of Appoquinimink Sch. Dist. v. Johnson*, 543 F. Supp. 2d 351, 354 (D. Del. 2008) ("It is well-settled that an admission or consent to jurisdiction is insufficient to vest a federal court with proper subject matter jurisdiction over a plaintiff's claims.") (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)); *Ins. Corp. of Ireland*, 456 U.S. at 702 ("[N]o action of the parties can confer subject matter-jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant . . . .") (citation omitted).
[38] D.I. 16 at 2.
[39] *Id.*
[40] *Id.* at 2-3.
[41] *Employers Ins. of Wausaue v. Crown Cork & Seal Co.*, 942 F.2d 862, 864 (3d Cir. 1991); *see also Polak II*, 2008 WL 4905519, at *7 (In determining whether there is a real dispute by opposing parties, "the court is to realign the parties according to their substantive interests in the litigation.").
[42] *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980).
[43] *Id.* at 461.

jurisdiction only upon the citizenship of parties with "a real interest in the litigation."[44] "Nominal parties are generally those without a real interest in the litigation."[45]

The court agrees with Gimaex that the primary issue in this litigation is the purported deadlock between Gimaex and Spartan USA concerning the wind down of Spartan-Gimaex and that Gimaex and Spartan USA oppose each other on that issue.[46] Gimaex argues that the mere fact a trustee or receiver will decide the disposition of Spartan-Gimaex's assets does not render it "a real party in interest, with enforceable rights and duties" as Spartan USA contends.[47]

Gimaex argues Spartan-Gimaex itself has no interest, control, or stake in the liquidation and wind up of its assets as it is equally owned by Gimaex and Spartan USA. All decisions relating to the liquidation of Spartan-Gimaex require unanimous approval from its Board of Directors, equally split between Gimaex and Spartan USA, which has purportedly led to a deadlock and the need for a receiver or trustee.[48] Gimaex argues a dissolved Spartan-Gimaex cannot take part in the litigation in any meaningful way and its only role in this litigation is to have a receiver or trustee appointed over it.[49]

Gimaex states the relief it seeks, including appointment of a receiver or trustee, accounting, distribution or sale of Spartan-Gimaex's assets, and distribution of assets, would not "inure to the benefit of Spartan-Gimaex" nor "bind Spartan-Gimaex."[50]

---

[44] *Bumberger*, 952 F.2d at 767 (citing *Wolff*, 768 at 645).
[45] *Id.*
[46] D.I. 16 at 2. Spartan USA does not appear to dispute Gimaex's characterization.
[47] *Id.* Because Spartan USA and Gimaex each own a 50% interest in the Joint Venture and the Agreement does not yield managing control to either party, Gimaex insists the Joint Venture can take no position on the issue of its winding down. *Id.* at 9-10.
[48] *Id.* at 2.
[49] *Id.* at 10.
[50] D.I. 16 at 10 (quoting D.I. 9 at 5).

According to Gimaex, the relief it seeks would only inure to the benefit of its two members because any relief received by Spartan-Gimaex would be conveyed to Gimaex and Spartan USA.[51] As such, Gimaex concludes Spartan-Gimaex is a nominal defendant and not a real party in interest, and should be disregarded for the purpose of determining diversity.[52]

Spartan USA argues this court does not have diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is not complete diversity of citizenship between plaintiff Gimaex and "nominal defendant" Spartan-Gimaex, both of which are citizens of Florida.[53]

Spartan USA contends Spartan-Gimaex's Florida citizenship cannot be disregarded on the theory it is merely a nominal party,[54] because Gimaex's claims are purportedly derivative in nature, and it seeks to have a trustee or receiver decide the disposition of Spartan-Gimaex's assets, thereby making Spartan-Gimaex a real party in interest, with enforceable rights and duties under substantive law.[55]

Spartan USA states Gimaex and Spartan-Gimaex are both citizens of Florida because, as an LLC, Spartan-Gimaex "resides" for diversity purposes in each of the states in which the LLC's members, i.e., Gimaex and Spartan USA, reside.[56]

Spartan USA further maintains that Gimaex alleges Spartan USA mismanaged

---

[51] *Id.* In support of its position, Gimaex cites the Fifth Circuit's opinion in *Wolff v. Wolff*, 768 F.2d 642, 646 (5th Cir. 1985) ("That partnership was either already dissolved, as Richard asserts, or was dissolved as a result of the judgment in this suit. In either event, transfer of title to the partnership would have been a formal and doubtless unnecessary act, requiring the partnership in dissolution to convey the real estate in turn to the partners.").
[52] D.I. 16 at 10.
[53] D.I. 9 at 1.
[54] *Id.*
[55] *Id.*
[56] *Id.* at 2.

Spartan-Gimaex by failing to notify Sparta-Gimaex of changes in Spartan USA's designated members of the Sparta-Gimaex Board of Directors; failing to convene the Spartan-Gimaex board at least four times each fiscal year; failing to provide Spartan-Gimaex's monthly financial statement to Gimaex; failing to promote Spartan-Gimaex's projects; and failing to designate a senior management officer authorized to resolve disputes about the management of Spartan-Gimaex.[57]

Spartan USA notes this court has previously recognized that "'accusations of improper management generally implicate the potential for substantial harm to the limited liability company itself.'"[58] In *2009 Caiola Family Trust*, the plaintiff alleged, *inter alia*, that defendant engaged in mismanagement of the LLC's property and finances.[59] That court found the alleged nominal defendant had an interest in the derivative claim because it would receive any recovery won in the suit.[60] The plaintiff in that case, however, alleged breach of fiduciary duties owed to the plaintiff and the LLC, and the complaint also sought monetary damages on behalf of the LLC,[61] allegations and relief not sought in this case.

Spartan USA disputes Gimaex's assertion that Spartan-Gimaex is not a real party in interest. It notes the complaint's prayer for relief seeks appointment of a trustee, an accounting, disposition or sale of the Joint Venture's assets, and the distribution of proceeds.[62] Spartan USA maintains if such relief is granted it would inure

---

[57] *Id.* (citing D.I. 1 at ¶¶ 88-91, 103).
[58] *Id.* at 4 (quoting *2009 Caiola Family Trust v. PWA, LLC*, C.A. No. 12-1583-GMS, 2013 WL 3753614, at *1 n.2 (D. Del. July 10, 2013)).
[59] *2009 Caiola*, 2013 WL 3753614, at *1 n.2.
[60] *Id.*
[61] *Id.*
[62] D.I. 9 at 5.

to the benefit of Spartan-Gimaex and certainly bind it.[63] Spartan USA also contends if a trustee or receiver is appointed to sell or distribute proceeds of the Joint Venture's assets, the actions of the trustee or receiver would impose enforceable rights and duties on Spartan-Gimaex.[64] With respect to the asset purchases, Spartan USA suggests such rights and duties could include delivery, inspection, contract formation and performance, good faith dealing, warranty obligations, and rights to collection of payment.[65] Spartan USA also maintains distribution of proceeds and any sale or disposition to the Joint Venture's members would also impose enforceable rights and duties on the Joint Venture.[66] Therefore, by surrendering control of its assets to the trustee or receiver, Spartan USA argues the Joint Venture would be required to perform more than "ministerial duties," therefore demonstrating it a real party in interest.[67]

With respect to Count I, appointment of a liquidating trustee/receiver to wind down Spartan-Gimaex, the court must determine whether the Joint Venture is a real party in interest to that issue.

Ultimately, the court agrees with Gimaex the Spartan-Gimaex is not a real party in interest with regard to the appointment of a receiver or trustee to wind down the Joint Venture because it does not have a real interest in that issue.[68] Nominal parties are

---

[63] *Id.*
[64] *Id.* at 5-6.
[65] D.I. 22 at 4.
[66] *Id.*
[67] D.I. 9 at 6.
[68] *See Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991) ("Nominal parties are generally those without a real interest in the litigation.") (citing *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985)); *see also, e.g, Polak II*, 2008 WL 4905519. at *6-7 (finding "the primary issue or claim in this case is [the LLC's] dissolution" and that "whereas plaintiff and defendant oppose each other on the issue of [the LLC's] dissolution, [the LLC] itself has no interest"); *Polak v. Kobayashi*, C.A. No. 05-330-JJF, 2005 WL 2008306, at *2-3 (D. Del. Aug. 22, 2005) ("*Polak I*") (finding that the primary issue was dissolution of a two-member LLC; that determination of title to land held in the name of one of the co-venturers was only

11

"[t]ypically, . . . those . . . [who] . . . ha[ve] no control of, impact on, or stake in the controversy.'"[69]

The primary issue here is the wind down of the Joint Venture and liquidation and dividing its assets between owners Gimaex and Spartan, an issue on which the parties oppose each other. The previously-dissolved Joint Venture has no stake in that liquidation and division of assets as it will simply act as a conduit for any funds received in the liquidation to the Joint Venture's owners.[70] Because Spartan USA and Gimaex each own a 50% interest in Spartan-Gimaex, and all liquidation decisions must be made via unanimous approval of the equally-split, and allegedly deadlocked, Board of Directors, the Joint Venture has no control of, or impact on, resolution of its winding down and the appointment of a trustee or receiver to accomplish that goal.[71] Consequently, the court finds Spartan-Gimaex is a nominal party, not a real party in interest, with respect to Count I.

With regard to Counts II through V, Gimaex maintains each is a direct claim asserted against Spartan USA.[72] Count II, for conversion, alleges "Spartan USA is in

---

central to the LLC Agreement and fiduciary duty claims; and concluding that the LLC was not a real party in interest to the issue of dissolution and, therefore, was a nominal defendant).

[69] *Weston v. Progressive Commercial Holdings, Inc.*, C.A. No. 10-980, 2011 WL 231709, at *2 (D. Del. Jan. 24, 2011) (alterations in original) (quoting *Lincoln Property v. Roche*, 546 U.S. 81, 92 (2005)).

[70] *See Wolff v. Wolff*, 768 F.2d 642, 646 (5th Cir. 1985) ("Th[e] partnership was either already dissolved, as Richard asserts, or was dissolved as a result of the judgment in this suit. In either event, transfer of title to the partnership would have been a formal and doubtless unnecessary act, requiring the partnership in dissolution to convey the real estate in turn to the partners."). Although the Fifth Circuit's opinion is not binding precedent, the court notes the Third Circuit cited this opinion in describing nominal parties. *See Bumberger*, 952 F.2d at 767 (citing *Wolff*, 768 at 645).

[71] Given the primary issue is the winding down of Spartan-Gimaex, and its lack of control, impact on, or stake in that issue, the court is unconvinced that the potential actions the Joint Venture might take in the process of winding down demonstrate it is a real party in interest regarding the appointment of a trustee or receiver as Spartan USA argues.

[72] D.I. 16 at 2. Gimaex also contends if the court finds the actions of Spartan USA also harmed Spartan-Gimaex, it would be erroneous to characterize them as derivative because such characterization would limit the recovery it would receive due to Spartan USA's purported wrongful actions while granting

the possession of certain property belonging to Gimaex, which are not Joint Venture assets" and that "[d]espite [Gimaex's] repeated demands for the return of the Gimaex Property, the Gimaex Property has not been delivered to [Gimaex], thereby depriving [Gimaex] of its right to possess its property."[73] Failure to return that property has caused Gimaex to suffer continued "damages in an amount to be proven at trial."[74]

Count V, for tortious interference with business relations, alleges Spartan USA interfered with a longstanding business relationship between Gimaex, not Spartan-Gimaex, and the Sao Paulo Fire Department and its Chief, a business relationship of which Spartan USA was aware.[75] Spartan USA allegedly interfered with that business relationship by excluding Gimaex from a certain bidding process, not using Gimaex technology on the product, and creating a situation where Spartan USA would be competing with Gimaex in a market Spartan USA had access to because of Gimaex, as well as the Sao Paulo Fire Department not receiving a product with Gimaex's technology.[76] That interference caused continuing damage to Gimaex.[77]

---

partial recovery to Spartan USA for its alleged bad acts. *Id.* at 13. In support of that position, Gimaex cites the Delaware Court of Chancery's unpublished opinion in *In re Cencom Cable Income Partners*, No. C.A. 14634, 2000 WL 130629 (Del. Ch. Jan. 27, 2000). In that case the court the court was asked to determine whether claims of a breach of the duty of loyalty and of a partnership agreement brought by limited partner plaintiff's against the general partner were direct of derivative. *Id.* at *1. The court found the claims were not derivative because "the *only* injured party that may recover on these claims is in fact a class of all limited partners. It is an elementary principle of equity that defendants found liable for breaches of either fiduciary duties or contractual arrangements should not benefit from any remedy for these breaches." *Id.* at *4 (emphasis in original). As Spartan USA notes, however, that case was considered in a partnership context and the Third Circuit has pointed out that "*Cencom* involved a partnership and not a corporation" in affirming dismissal of derivative breach of fiduciary duty and aiding and abetting claims. *Winer Family Trust v. Queen*, 503 F.3d 319, 339 (3d Cir. 2007). Here Spartan-Gimaex is an LLC, not a partnership. As such, Gimaex's reliance on that case is unconvincing.

[73] D.I. 1 at ¶¶ 125-126.
[74] *Id.* at ¶ 127.
[75] *Id.* at ¶ 143.
[76] *Id.* at ¶ 144.
[77] *Id.* at ¶ 145.

Gimaex likewise contends this court has diversity jurisdiction with respect to its breach of contract and breach of implied covenant of good faith and fair dealing as each is allegedly direct and not derivative in nature because Spartan USA's purported acts and omission harmed Gimaex, not the Joint Venture.[78]

Count II, conversion, is clearly a direct claim as it alleges "Spartan USA is in the possession of certain property belonging to Gimaex, *which are not Joint Venture assets*, . . . (the 'Gimaex Property')."[79] There the injury alleged was suffered exclusively by Gimaex and any damages awarded for that injury would be recovered by Gimaex, not Spartan-Gimaex. Therefore, Spartan-Gimaex is a nominal party with respect to this claim.

Likewise, Count V, tortious interference with business relations, is also a direct claim as it alleges Gimaex had a longstanding business relationship with the Sao Paulo Fire Department and its Chief, of which Spartan USA was aware, and that Spartan USA interfered with that relationship in various ways.[80] Again, the injury alleged was suffered exclusively by Gimaex and any damages awarded for that injury would be recovered by Gimaex, not Spartan-Gimaex. Spartan-Gimaex, therefore, is a nominal party with respect to this claim.[81]

Count III, breach of contract, alleges Spartan USA breached the Agreement by

---

[78] D.I. 16 at 10-11.
[79] D.I. 1 at ¶ 125 (emphasis added).
[80] D.I. 1 at ¶¶ 143, 144.
[81] Although Spartan USA is correct that in determining whether a claim is direct or derivative, "the court looks beyond plaintiff[']s characterization of the claims," *Polak II*, 2008 WL 4905519, at * 7, looking at the facts of the complaint reveals Gimaex's conversion claim and tortious interference with business relations are direct claims.

not fulfilling certain obligations required by Paragraph 3.01 of the Agreement.[82]  Gimaex alleges it fully performed its obligations by producing and supplying its component parts for certain products.[83]  It alleges Spartan USA breached the Agreement by failing to use diligence in marketing and promoting the Joint Venture Projects.[84]  Here, it was the Joint Venture that suffered the harm from Spartan USA's alleged failure to diligently market and promote the Joint Venture's Projects in that it did not receive revenue that it otherwise might have, had Spartan USA's diligently fulfilled its obligations under the Agreement.  Gimaex was harmed indirectly by not receiving its portion of the hoped-for additional revenue it would be due in light of its 50% ownership interest in the Joint Venture.  Therefore, Gimaex did not suffer harm distinct from the harm to Spartan-Gimaex to which damages would flow.  Thus, Spartan-Gimaex is not a nominal party with respect to this claim.

Count IV, breach of implied covenant of good faith and fair dealing, alleges Spartan USA breached Paragraph 3.01 of the Agreement[85] by failing to undertake in good faith, commercially reasonable efforts to sell the Joint Venture Projects and refusing to sell a certain product to a Canadian buyer.[86]  The failure to make that sale is alleged "to advance Spartan USA's interest *over the interest of the Joint Venture.*"[87]  The purported misconduct by Spartan USA is claimed "to have been taken to enrich

---

[82] D.I. 1 at ¶ 130; Agreement at ¶ 3.01(d) ("Once the Venture shall have approved and adopted a Project, the Venturers will proceed with diligence to provide the services and materials required of them and will continuously support the Project, subject to the terms and conditions of the related Project Plan.").
[83] D.I. 1 at ¶ 131.
[84] *Id.* at ¶ 132.
[85] D.I. 1 at ¶ 139; Agreement at ¶ 3.01(a) ("The purpose of the Venture is to identify and bring products to market segments for Venture profit by application of the Venturer's expertise . . . .").
[86] D.I. 1 at ¶ 139.
[87] *Id.* (emphasis added).

15

Spartan USA *to the detriment of the Joint Venture*. As such, these acts and omissions were taken in bad faith and without regard for the best interests *of the Joint Venture* . . . ."[88] Here, Gimaex specifically alleges the harm suffered was to Spartan-Gimaex, as well as Gimaex itself, and damages would flow to the Joint Venture. Thus, Spartan-Gimaex is not a nominal party with respect to this claim.

Consequently, the court concludes it has subject matter jurisdiction over Counts I, II, and V, but not over Counts III and IV.

## V. ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, it is recommended that:

(1) Spartan USA's motion to dismiss for lack of subject matter jurisdiction (D.I. 8) be GRANTED as to Counts III and IV of the complaint and DENIED as to Counts I, II, and V.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: October 14, 2015        /s/ Mary Pat Thynge
                               UNITED STATES MAGISTRATE JUDGE

---

[88] *Id.* at ¶ 140 (emphasis added).