# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GIMAEX HOLDING, INC., | : |
| Plaintiff, | : |
| v. | : C. A. No. 15-515-RGA |
| SPARTAN MOTORS USA, INC., <br> f/k/a CRIMSON FIRE, INC., | : |
| Defendant, | : |
| SPARTAN-GIMAEX <br> INNOVATIONS, LLC, | : |
| Nominal Defendant. | : |

## **MEMORANDUM ORDER**

**I.   INTRODUCTION**

On June 19, 2015, Gimaex Holding, Inc. ("Gimaex") filed this action against Spartan Motors USA, Inc. ("Spartan USA") seeking appointment of a liquidating receiver/trustee (Count I) over Spartan-Gimaex Innovations, LLC (the "Joint Venture" or "Spartan-Gimaex") in which Gimaex and Spartan USA are the sole and equal members and which Gimaex characterizes as a "nominal defendant."[1]  Gimaex also seeks

---

[1] D.I. 1 at ¶ 1.  Gimaex is a Florida corporation with its principal place of business in Florida, and is a 50% member of Spartan-Gimaex.  *Id.* at ¶¶ 6-7.  Spartan USA is a South Dakota corporation, with its registered office in Pennsylvania, and a principal office in Michigan.  *Id.* at ¶ 9.  It is the other 50% member of Spartan-Gimaex.  *Id.* at ¶ 10.  Spartan USA is a wholly owned subsidiary of Spartan Motors, Inc. ("Spartan Motors").  *Id.* at ¶ 1.  Spartan Motors is a Michigan corporation with a principal office in Michigan.  *Id.* at ¶ 14.  Spartan-Gimaex is a Delaware limited liability company with its principal place of business in Michigan and has a registered agent and registered office in Delaware.  *Id.* at ¶ 12.  Spartan USA previously moved to dismiss the complaint for lack of subject matter jurisdiction based on its argument that Spartan-Gimaex was not a nominal defendant and, thus, there was a lack of complete diversity between the parties.  This court recently issued a Report and Recommendation concerning that motion recommending Spartan USA's motion to dismiss be granted as to Counts III and IV of the complaint and denied as to Counts I, II, and V.  *See* D.I. 29.

damages for conversion (Count II), breach of contract (Count III), breach of implied covenant of good faith and fair dealing (Count IV), and tortious interference with business relations (Count V).[2] Currently before the court is Gimaex's motion for expedited proceedings and trial on Count I of its complaint.[3]

## II. BACKGROUND

On or around November 8, 2012, Gimaex and Spartan USA executed a Venture Agreement for Spartan-Gimaex Innovations, LLC ("Agreement") creating Spartan-Gimaex, a joint venture in which Gimaex and Spartan USA each have a 50% ownership interest.[4] Spartan-Gimaex was created to combine the complementary skills, technologies, resources, capabilities, and product portfolios of Gimaex and Spartan USA to develop, manufacture, and distribute products to domestic and international fire service markets.[5] As a fire apparatus manufacturer, Gimaex was to provide its technology for fire extinguishing systems to Spartan USA to be incorporated in its fire vehicles and market those vehicles in North America, South America, Asia, and Europe.[6]

Under the Agreement, management of Spartan-Gimaex was vested in a board of directors, composed of eight individuals, four of whom were designated by Gimaex and four of whom were designated by Spartan USA ("Board of Directors").[7] The Board of Directors has the sole and exclusive right, power, and authority to conduct, supervise,

---

[2] *Id.* at ¶¶ 124-145.
[3] D.I. 2.
[4] D.I. 1 at ¶¶ 1, 22; *id.,* Ex. A ("Agreement").
[5] D.I. 2 at 2; D.I. 1 at ¶ 23.
[6] D.I. 1 at ¶ 23.
[7] D.I. 1 at ¶ 24; *id.*, Agreement at ¶ 5.01(b); *id.*, Agreement at Ex. A.

2

and manage the business and affairs of Spartan-Gimaex.[8] The Agreement requires Gimaex and Spartan USA to each "proceed with diligence to provide the services and materials required of them" and support and promote Spartan-Gimaex's projects.[9] Ultimately, Spartan-Gimaex did not achieve any of its goals and did not approach any of its projections for each of its projects.[10] On or around, February 19, 2015, Spartan-Gimaex was dissolved by mutual consent.[11]

Article XII of the Agreement provides procedures for winding up, liquidating, and distributing the assets of Spartan-Gimaex upon dissolution, and authorizes the Board of Directors to take certain actions.[12] Unanimous board approval is required for the Board of Directors to takes those actions.[13] The Agreement provides a procedure for resolving a deadlock prior to dissolution, but does not provide a mechanism for resolving a deadlock among the Board of Directors regarding the wind down process.[14]

Gimaex's alleges the parties are deadlocked on the wind down process.[15] Gimaex seeks appointment of a trustee or receiver to resolve the alleged deadlock, liquidate Spartan-Gimaex's assets, and wind down the Joint Venture.[16] Additionally, Gimaex requests an accounting from Spartan-Gimaex, and direction and approval of the disposition or sale of Spartan-Gimaex's assets in a manner that optimizes their value, with distribution of any proceeds in a manner that complies with the Agreement

---

[8] *Id.* at ¶ 29; *id.*, Agreement at ¶ 5.01(a).
[9] *Id.* at ¶ 32; *id.*, Agreement at ¶ 3.01(d).
[10] *Id.* at ¶ 101.
[11] *Id.* at ¶ 104.
[12] *Id.* at ¶ 97; *id.*, Agreement at ¶ 12.02.
[13] *Id.* at ¶ 30; *id.*, Agreement at ¶ 5.06.
[14] *Id.* at ¶¶ 96, 100.
[15] *Id.* at ¶ 4.
[16] *Id.*

and Delaware law.[17]

## III.  GOVERNING LAW

Gimaex seeks expedition of the court's consideration of Count I of its complaint requesting appointment of a trustee or receiver to wind down Spartan-Gimaex. "Although the burden is not high, a plaintiff seeking expedition must have 'articulated a sufficiently colorable claim and shown a sufficient possibility of a threatened irreparable injury . . . .'"[18]  "The Court need not determine the merits of the case or 'even the legal sufficiency of the pleadings' at this stage of the proceedings."[19]  "This court traditionally has acted with a certain solicitude for plaintiffs in this procedural setting and thus has followed the practice of erring on the side of more hearings rather than fewer."[20]  On the other hand, "where there clearly is no demonstrable need for the remedy of preliminary injunction or, in the rarer case when there is not even any colorable claim pleaded, . . . we decline to impose the costs associated with such a proceeding."[21]

## IV.  DISCUSSION

Gimaex maintains its allegations provide sufficient grounds to expedite consideration of Count I of the complaint.  Gimaex contends it is undisputed that the

---

[17] *Id.* at 28 (Prayer for Relief).
[18] *In re Ness Techs., Inc.*, C.A. No. 6569-VCN, 2011 WL 3444573, at *2 (Del. Ch. Aug. 3, 2011) (quoting *Police & Fire Ret. Sys. of the City of Detroit v. Bernal*, C.A. No. 4663-CC, 2009 WL 1873144, at *1 (Del. Ch. June 26, 2009)); *see also Morton v. Am. Mktg. Indus. Holdings, Inc.*, C.A. No. 14550, 1995 WL 1791090, at *2 (Del. Ch. Oct. 5, 1995) ("In determining whether to grant a request for expedited proceedings, the plaintiff must demonstrate a 'sufficiently colorable claim and show a sufficient possibility of a threatened irreparable injury' to justify the costs involved.") (quoting *Giammargo v. Snapple Beverage Corp.*, C.A. No. 13845, 1994 WL 672698, at *2 (Del. Ch. Nov. 15, 1994)).
[19] *Morton*, 1995 WL 1791090, at *2 (quoting *Giammargo*, 1994 WL 672698, at *2).
[20] *Giammargo*, 1994 WL 672698, at *2; *see also Box v. Box*, 697 A.2d 395, 399 (Del. 1997) ("Delaware courts are always receptive to expediting any type of litigation in the interests of affording justice to the parties.").
[21] *Giammargo*, 1994 WL 672698, at *2.

4

parties agreed to dissolve the Joint Venture, and the sole remaining objective of the Joint Venture is to wind down.[22] It contends the complaint sets forth a more than colorable claim of a deadlock among the parties and/or their respective director-designees concerning the wind down process.[23] Gimaex insists the appointment of a trustee on an expedited basis is necessary to wind down the Joint Venture's affairs and liquidate its assets.[24]

Gimaex states, under these circumstances, Delaware law permits the appointment of a trustee pursuant to statute and as a matter of equity.[25] It also notes it is "well established that a federal court, sitting as a court of equity, has inherent power to order the liquidation of a solvent corporation, where there is no other course available to remedy a situation which is inequitable to the stockholders."[26] "[T]he federal decisional law of this circuit and the decisional law of Delaware on the question [of whether to appoint a trustee or receiver] are in accord."[27] "Among other situations which may warrant or require a court of equity to appoint a receiver to liquidate a solvent corporation is a *deadlock* between contending factions seeking to control and manage a

---

[22] D.I. 2 at 7.
[23] *Id.*
[24] *Id.*
[25] *Id.* (citing 6 *Del. C.* § 18-803(a) ("Unless otherwise provided in a limited liability company agreement, a manager who has not wrongfully dissolved a limited liability company or, if none, the members or a person approved by the members, in either case, by members who own more than 50 percent of the then current percentage or other interest in the profits of the limited liability company owned by all of the members, may wind up the limited liability company's affairs; but the Court of Chancery, upon cause shown, *may wind up the limited liability company's affairs upon application of any member or manager, or the member's personal representative or assignee, and in connection therewith, may appoint a liquidating trustee.*") (emphasis added); *In re Carlisle Etcetera LLC*, 114 A.3d 592, 601 (Del. Ch. 2015) ("'[T]his Court, as a court of equity, has the power to order the dissolution of a solvent company and appoint a receiver to administer the winding up of those assets.'") (alteration in original) (quoting *Weir v. JMACK, Inc.*, C.A. No. 3263-CC, 2008 WL 4379592, at *2 (Del. Ch. Sept. 23, 2008)).
[26] *Campbell v. Pennsylvania Indus., Inc.*, 99 F. Supp. 199, 204 (D. Del. 1951).
[27] *Id.* at 204-05.

corporation . . . ."[28]

Gimaex asserts the complaint also sufficiently alleges the possibility of irreparable injury.[29] It maintains that absent expedition, Spartan-Gimaex will remain deadlocked on the wind down issues, its assets will depreciate during the deadlock, and the parties will be forced to remain members in a company they mutually decided to dissolve.[30]

Gimaex also notes the Joint Venture Projects are comprised of property belonging solely to Gimaex and that property is being unlawfully held by Spartan USA at location(s) unknown to Gimaex.[31] Being deprived of that property is allegedly another reason Gimaex is being irreparably harmed if the deadlock continues and a trustee cannot marshal that property.[32]

Spartan USA argues Gimaex is unable to show a sufficient possibility of threatened irreparable harm to warrant expedition.[33] It contends the alleged deadlock cited as justification for expedited relief has been contrived by Gimaex.[34] Additionally, it maintains there is insufficient threat of irreparable harm because, if Gimaex prevails on the merits of its claims, the court can fashion a monetary remedy fully compensating Gimaex for any losses it suffered and Spartan USA will be capable of paying any

---

[28] *Id.* at 205 (emphasis added); *see also In re English Seafood (USA) Inc.*, 743 F. Supp. 281, 288 (D. Del. 1990) ("[T]his federal court has the equity power to grant the appropriate relief necessary to protect [the petitioner's] investment in the assets of English Seafood from *depletion due to alleged deadlock* between the shareholders of that corporation.") (emphasis added).
[29] D.I. 2 at 8.
[30] *Id.*
[31] *Id.* (citing D.I. 1 at ¶¶ 31, 125-127).
[32] *Id.*
[33] D.I. 6 at 1.
[34] *Id.* at 1-2.

damages awarded to Gimaex.[35]

Contrary to Gimaex's assertion that the Spartan-Gimaex board is deadlocked, Spartan USA maintains that for several months Gimaex has refused to even discuss what it seeks to have a court appointed trustee or receiver do.[36] According to Spartan USA, instead of discussing details of distributing the Joint Venture's assets, Gimaex initiated this litigation.[37]

In the meantime, Spartan USA states Gimaex entered into an agreement with one of its competitors to pursue business opportunities that were the objective of the Joint Venture.[38] As a result, Spartan USA argues it is the party facing irreparable harm if Gimaex obtains expedited relief, including the potential that confidential information of Spartan USA and intellectual property in which it has an interest will be turned over to its competitor with which Gimaex has partnered.[39]

Spartan USA maintains it would only be appropriate for the court to consider appointment of a trustee or receiver if the parties truly cannot agree on a plan of liquidation after *bona fide* negotiations.[40] Even then, however, Spartan USA argues the

---

[35] *Id.* at 2; *Giammargo*, 1994 WL 672698, at *2 (declining to grant expedition where, if plaintiffs were successful on their claims, "the court will be in a position to shape a decree that will fully compensate plaintiffs for any loss they may suffer" and noting another relevant consideration was "that among the defendants are persons who will quite evidently be capable of responding in damages to any award that might be made"). Spartan USA states that it is fully capable of paying any damages Gimaex may be awarded in light of Spartan Motors being a publicly traded company that has been in operation since 1975 and notes Gimaex has not alleged Spartan USA's inability to make such payment. D.I. 6 at 4.

[36] D.I. 6 at 3 (citing D.I. 7 (Affidavit of Daryl M. Adams) at ¶¶ 2-9, Exs. B-F). Adams is the President and Chief Executive Officer and Director of Spartan Motors, the ultimate parent company of Spartan USA, and a Director of Spartan USA. D.I. 7 at ¶ 1.

[37] D.I. 6 at 4; D.I. 7 at ¶ 2.

[38] D.I. 6 at 4; D.I. 7 at ¶ 2, Ex. A.

[39] D.I. 6 at 4.

[40] *Id.*

7

court would need to base any final resolution on a fully developed record.[41]

Despite Spartan USA's assertion of a contrived deadlock, the court finds the complaint sets forth a colorable claim regarding the purported deadlock.

The parties are each 50% members of Spartan-Gimaex.[42] The Joint Venture is managed by an eight member Board of Directors, with four directors designated by each party.[43] Certain actions by the Board of Directors require unanimous approval, including, "[d]oing or permitting to be done any act or thing whereby the [Joint] Venture may be wound up (whether voluntarily or compulsorily) . . . ."[44] Due to failure of the Joint Venture to achieve its goals and failure to approach its projections for each of its projects, the Joint Venture was dissolved by mutual consent on February 19, 2015.[45] Although the Agreement provides a procedure for resolving a deadlock prior to dissolution, it provides no mechanism for resolving a deadlock of the Board of Directors regarding the wind down process.[46]

According to the complaint and the affidavit of Daryl M. Adams (submitted with Spartan USA's opposition brief), after the dissolution and prior to the filing of this action, the parties communicated about the Joint Venture's wind down on, at least, February 27, 2015; March 4, 2015; March 5, 2015; March 25, 2015; May 11, 2015; and May 15, 2015, with each side offering several options and proposals to accomplish that goal.[47]

---

[41] *Id.*
[42] D.I. 1 at ¶¶ 1, 7, 10.
[43] *Id.* at ¶ 24; *id.*, Agreement at ¶ 5.01(b).
[44] *Id.* at ¶ 30; *id.*, Agreement at ¶ 5.06(b)(viii).
[45] *Id.* at ¶¶ 101, 104.
[46] *Id.* at ¶¶ 96, 100.
[47] *Id.* at ¶¶ 113-116; D.I. 7 at ¶¶ 6-8. On August 21, 2015, Spartan USA again wrote to Gimaex setting forth its proposals regarding two issues related to winding down the Joint Venture. D.I. 26, Ex. A. Gimaex characterized the terms of those proposals as "commercially unreasonable." D.I. 26 at 2.

8

Those communications did not result in the parties reaching an agreement on the Joint Venture's wind down.[48] Based on the above alleged facts and communications, the court finds Gimaex has set forth a colorable claim that the parties are deadlocked as to how to wind down the Joint Venture.[49]

With regard to Spartan USA's contention that Gimaex will not suffer irreparable harm because it is "capable of responding in damages to any award that might be made,"[50] the court notes Gimaex is not seeking expedited consideration of Counts II-V, which, should it prevail, could entitle Gimaex to monetary damages. Gimaex only seeks expedited consideration of its request in Count I that a trustee or receiver be appointed to oversee the wind down of Spartan-Gimaex.

In light of the purported ongoing deadlock on how to wind down the Joint

---

[48] At this point, it does not seem likely that additional negotiations between the parties surrounding the wind down process would prove productive. Gimaex maintains, as evidenced by the current lawsuit, given the rupture in the parties' relationship, an agreement between the parties on any of the issues at this juncture, let alone all the issues involved in the wind down of Spartan-Gimaex, is implausible. D.I. 14 at 5. It concludes any further negotiations between the parties would be fruitless precisely because the parties are deadlocked. *Id.* Furthermore, due to changes of individuals designated by Spartan USA to the Board of Directors, notice of which Gimaex was often not given, Gimaex alleges it is uncertain as to whom Spartan USA has currently designated as representing its interest on the Board of Directors. D.I. 1 at ¶ 28.

[49] *Cf. Vila v. BVWebTies*, C.A. No. 4308-VCS, 2010 WL 3866098, at *7 (Del. Ch. Oct. 1, 2010) ("This case is one in which an LLC has two managers whose agreement is contractually required for WebTies to move forward with a properly authorized strategy. Neither manager can act in isolation for WebTies without the assent of the other. This sort of deadlock has classically provided the basis for a dissolution in the corporate context when a joint venture with two coequal shareholders faces a deadlock; indeed, a specific section of the DGCL, § 273, addresses that scenario.").

[50] D.I. 6 at 2 (citing *Giammargo*, 1994 WL 672698, at *3). In *Giammargo*, the plaintiffs sought expedited treatment of a planned-for preliminary injunction motion to block a proposed merger at a share price the plaintiffs considered too low and that was tainted with self-interest because certain board members received side payments. *Giammargo*, 1994 WL 672698, at *1-2. It was in that setting the court denied expedited treatment of the case when it determined that, if plaintiffs ultimately prevailed on their claims, "the court will be in a position to shape a decree that will fully compensate plaintiffs for any loss they may suffer" and noted that "among the defendants are persons who will quite evidently be capable of responding in damages to any award that might be made." *Id.* at *3. Unlike *Giammargo*, this case does not involve a preliminary injunction proceeding; Gimaex is only seeking expedition regarding its request to have a trustee or receiver appointed to wind down the Joint Venture.

Venture, Gimaex insists, absent expedition, that deadlock will continue indefinitely, the Joint Venture's assets will depreciate, and the parties will be forced to remain members in a company they mutually decided to dissolve.[51] According to Gimaex, such a situation has been recognized in Delaware as irreparable harm, which cannot be remedied by monetary award.[52] It also maintains that Spartan USA's possession of Joint Venture assets, including property belonging solely to Gimaex, constitutes an irreparable injury.[53] The court determines these allegations show a sufficient possibility of threatened irreparable injury.

As to Spartan USA's expressed fears concerning its intellectual property and confidential information being turned over to a competitor, Gimaex notes the Agreement addresses the parties' intellectual property rights and use of confidential information.[54] Gimaex also points out the court is capable of entering a confidentiality/protective order for discovery and pleadings in this case, and the court (with or without a receiver/trustee) can address Spartan USA's concerns post wind down.[55] The court

---

[51] D.I. 14 at 6. Significantly, Spartan USA's August 21, 2015 letter to Gimaex acknowledges Joint Venture asset depreciation. In one of its proposals, Spartan USA states: "[t]he inventory value of the four units is $1.5 million. Spartan is proposing this step because the equipment was manufactured years ago and the partially-completed units *continue to depreciate*." D.I. 26, Ex. A at 1 (emphasis added).

[52] D.I. 14 at 6-7 (citing *Prior v. Prosser*, C.A. No. 14443-NC, 1995 WL 1791086, at *1 (Del. Ch. Aug. 3, 1995) (noting the "irreparable injury" caused "by continuing as the '*status quo*' a deadlocked and feuding Board of Directors factionalized by 'joint' or 'co-CEOs'"); *see also cf. Wagoman v. Dolan*, C.A. No. 5564-MG, 2011 WL 684615, at *2-3 (Del. Ch. Jan. 26, 2011) (In determining whether dissolution of a two member joint venture should occur, the count found, *inter alia* "an irreparable rupture of the business relation [between the co-venturers]" warranted dissolution and instructed the parties to, shortly thereafter, inform the court of any reasons it "should not appoint a trustee to gather the assets of [the joint venture] and wind-up its affairs.")).

[53] *Id.* at 7 (citing *Kuhns v. Bruce A. Hiler Del. QPRT*, C.A. No. 7586-VCG, 2014 WL 1292860, at *23 (Del. Ch. Feb. 24, 2014) (noting "this Court's prior findings that 'interference with a property right constitutes irreparable harm'") (quoting *Vansant v. Ocean Dunes Condo. Council Inc.*, C.A. No. 8700-VCG, 2014 WL 718058, at *1 (Del. Ch. Feb. 26, 2014)).

[54] *Id.* (citing D.I. 1, Agreement at ¶ 3.02).

[55] *Id.*

agrees with Gimaex that Spartan USA's concerns can be addressed with an appropriate confidentiality/protective order and those concerns, therefore, do not warrant denial of Gimaex's motion.

Finally, the court disagrees with Spartan USA that the court needs to base any final resolution on a fully developed record.[56] When considering whether to grant expedition, "[t]he Court need not determine the merits of the case or 'even the legal sufficiency of the pleadings' at this stage of the proceedings."[57] And, again, Gimaex only seeks expedition on Count I of its complaint. Considering the narrow focus of discovery with respect to that claim, i.e., whether a deadlock exists, the court finds Gimaex's request is reasonable and that an accelerated time line for the resolution of that issue would not be unduly burdensome for Spartan USA under the circumstances of this case.[58]

In light of a plaintiff's burden in seeking expedition being "not high,"[59] and that Delaware courts "traditionally ha[ve] acted with a certain solicitude for plaintiffs in this procedural setting and thus ha[ve] followed the practice of erring on the side of more hearings rather than fewer,"[60] the court determines Gimaex has "'articulated a sufficiently colorable claim and shown a sufficient possibility of a threatened irreparable injury'"[61] to warrant expedited consideration of Count I of the complaint.

---

[56] D.I. 6 at 4.
[57] *Morton v. Am. Mktg. Indus. Holdings, Inc.*, C.A. No. 14550, 1995 WL 1791090, at *2 (Del. Ch. Oct. 5, 1995) (quoting *Giammargo*, 1994 WL 672698, at *2).
[58] *See, e.g.*, *Kone Corp. v. ThyssenKrupp USA, Inc.*, C.A. No. 11-465-LPS-CJB, 2011 WL 4478477, at *4 (D. Del. Sept. 26, 2011) ("[T]he party seeking [expedited] discovery [must] show 'good cause' for its motion, such that the request is 'reasonable' in light of the relevant circumstances.").
[59] *In re Ness Techs., Inc.*, C.A. No. 6569-VCN, 2011 WL 3444573, at *2. (Del. Ch. Aug. 3, 2011).
[60] *Giammargo*, 1994 WL 672698, at *2.
[61] *In re Ness*, 2011 WL 3444573, at *2 (quoting *Police & Fire Ret. Sys. of the City of Detroit v. Bernal*, C.A. No. 4663-CC, 2009 WL 1873144, at *1 (Del. Ch. June 26, 2009)).

**V. DISPOSITION**

Consistent with the findings herein,

IT IS ORDERED and ADJUDGED that Gimaex's motion for expedited proceedings for Count I of the complaint (D.I. 2) is GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), FED. R. CIV. P. 72(a) and D. DEL. LR 72.1, any objections to the Memorandum Order shall be filed within fourteen (14) days limited to ten (10) pages after being served with the same. Any response is limited to ten (10) pages.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is available on the court's website, www.ded.uscourts.gov.


Dated: October 30, 2015          /s/ Mary Pat Thynge
                                 UNITED STATES MAGISTRATE JUDGE