# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GIMAEX HOLDING, INC. )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SPARTAN MOTORS USA, INC., )<br>f/k/a CRIMSON FIRE, INC., )<br>)<br>Defendant, )<br>)<br>SPARTAN-GIMAEX )<br>INNOVATIONS, LLC, )<br>)<br>Nominal Defendant. ) | C.A. No. 1:15-cv-00515-RGA |

## MEMORANDUM OPINION

Michael F. Bonkowski, Esq., Nicholas J. Brannick, Esq., Cole Schotz P.C., Wilmington, DE, attorneys for Spartan Motors USA, Inc.

Brian M. Rostocki, Esq., Diana Rabeh, Esq., Reed Smith LLP, Wilmington, DE, attorneys for Gimaex Holding, Inc.

December 22, 2015

ANDREWS, U.S. District Judge:

Currently before the Court are the parties' objections to a Report and Recommendation and Memorandum Opinion issued by a Magistrate Judge. On or around November 8, 2012, plaintiff Gimaex Holding, Inc. and defendant Spartan Motors USA, Inc. executed a Venture Agreement (the "Agreement") creating Spartan-Gimaex Innovations, LLC, a joint venture. Gimaex and Spartan each have a 50% ownership interest in the Joint Venture. Ultimately, the Joint Venture did not achieve any of its goals and was dissolved in February 2015 by mutual consent.

Gimaex alleges that the parties are deadlocked on the wind down process. Gimaex filed a complaint seeking, among other things, the appointment of a trustee or receiver to resolve the alleged deadlock, liquidate the Joint Venture's assets, and wind down the Joint Venture. (D.I. 1). Gimaex also filed a Motion to Expedite only the claim seeking the appointment of a receiver. (D.I. 2). Spartan filed a Motion to Dismiss the entire complaint for lack of subject matter jurisdiction. (D.I. 8). The parties' motions were referred to a United States Magistrate Judge.

On October 14, 2015, the Magistrate Judge issued a Report and Recommendation recommending that Spartan's motion to dismiss be granted in part and denied in part. (D.I. 29). Spartan filed objections to which Gimaex responded. (D.I. 33, 35). Gimaex also filed objections to which Spartan did not respond. (D.I. 32). My review of these objections is *de novo*. Fed. R. Civ. P. 72(b)(3).

On October 31, 2015, the Magistrate Judge issued a Memorandum Opinion granting Gimaex's motion to expedite Count I. (D.I. 31). Spartan filed objections, to which Gimaex responded. (D.I. 37, 41). "The decision by a Magistrate Judge on a motion to expedite is a non-dispositive matter." *Alfred v. LSU Health Sci. Ctr. Shreveport*, 2008 WL 2020366, at *1 (W.D. La. May 8, 2008); *Boswell v. Warden, Lebanon Corr. Inst.*, 2008 WL 4411416, at *2 (S.D. Ohio

1

Sept. 29, 2008) (characterizing a motion to expedite as "non-dispositive"). Accordingly, the memorandum opinion will not be set aside unless clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

## I. OBJECTIONS TO THE REPORT AND RECOMMENDATION GRANTING IN PART AND DENYING IN PART SPARTAN'S MOTION TO DISMISS

Spartan argued before the Magistrate Judge that the Court lacks subject matter jurisdiction, because it does not have complete diversity of citizenship. According to Spartan, the Joint Venture is a real party in interest whose citizenship must be considered in determining diversity jurisdiction. (D.I. 9 at 1). Gimaex contended that the Joint Venture's citizenship can be disregarded on the theory that it is merely a nominal party. (D.I. 16 at 10).

The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). "Diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Rumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3d Cir. 1991) (*quoting Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original)). "For purposes of determining diversity of citizenship, the citizenship of an LLC is equivalent to all the states where its members are domiciled ...." *In re PMTS Liquidating Corp.*, 490 B.R. 174, 184 (D. Del. 2013). Nevertheless, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Rumberger*, 952 F.2d. at 767 (quoting *Navarro Sav. Assn. v. Lee*, 446 U.S. 458, 461 (1980)).

Whether the Joint Venture is a real party in interest depends on whether Gimaex's claims are direct or derivative. *See Polak v. Kobayashi*, 2008 WL 4905519 at *7 (D. Del. Nov. 13, 2008). The issue of whether a claim is direct or derivative "must turn solely on the following questions:

2

(1) who suffered the alleged harm (the corporation or the suing shareholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). "A direct claim seeks relief for injuries that fall distinctly upon the individual participants in the business association or involve the participants' contractual rights." *In re Cencom Cable Income Partners*, 2000 WL 130629, at *3 (Del. Ch. Jan. 27, 2000). A derivative claim, however, states an injury against the business association as a whole, and any relief flowing to the individual participants only comes to them indirectly, by way of their pro-rata share in the association. *Id.*

The Magistrate Judge found that some claims were direct, some claims were derivative, and recommended dismissal only of the derivative claims. The following claims were direct: appointment of a liquidating trustee/receiver (Count I), conversion (Count II), and tortious interference with business relations (Count V). (D.I. 29 at 14). The following claims were derivative: breach of contract (Count III) and breach of the implied covenant of good faith and fair dealing (Count IV). (*Id.* at 14-15). Each party objected to the part of the Report that was not in its favor. (D.I. 32, 35).

### A. Gimaex's Objections to the Report

Gimaex objects to the Magistrate Judge's recommendation that the claims for breach of contract and breach of the implied covenant of good faith and fair dealing are derivative, not direct. (D.I. 32 at 5). According to Gimaex, Spartan breached Paragraph 3.01 of the Agreement, setting forth the various projects the Joint Venture would pursue, by failing to use diligence in marketing and promoting those projects. (D.I. 1 at ¶ 132). Gimaex alleges that Spartan breached the implied covenant of good faith and fair dealing by failing to undertake in good faith, commercially

3

reasonable efforts to market and promote the joint venture projects. (*Id.* at 139). The Magistrate Judge determined that the claims were derivative, because the joint venture suffered the harm from Spartan's alleged failures, and Gimaex was harmed only indirectly by not receiving its pro rata share of the hoped for additional revenue. (D.I. 29 at 15).

According to Gimaex, the Magistrate Judge erred by not taking into consideration Delaware precedent where a breach of contract claim was considered direct. (D.I. 32). Gimaex, however, has not alleged a breach of an individual contract right, unlike the cases on which it relies. In *Polak v. Kobayashi*, the defendant breached the plaintiff's contractual right to jointly manage the LLC by unilaterally making decisions for the LLC. 2008 WL 4905519 at *8. Thus, the plaintiff (not the LLC) was harmed and the plaintiff (not the LLC) would receive the benefit of any recovery. *Id.* at *8. Similarly, in *In re Cencom Cable Income Partners, L.P*, the general partner breached the contract by improperly terminating the limited partner's priority cash distributions. 2000 WL 130629 at *3 (Del. Ch. Jan. 27, 2000). As the court noted, the injury affected "only the limited partners as a distinct class within the partnership" and any relief would not benefit the entire partnership." *Id.* at *3. Gimaex's next argument underscores the fact that any recovery will directly benefit the entire joint venture, and indirectly benefit its members, including Spartan, by way of their pro rata interest.

Relying on *Cencom*, Gimaex next argues that the principles of equity dictate that the derivative claims must be considered direct because otherwise Spartan will receive the benefit of any recovery. (D.I. 32). In *Cencom*, the Delaware Court of Chancery decided that claims for breach of the fiduciary duty of loyalty and breach of the partnership agreement in connection with the appraisal process, which appeared to be derivative, would be considered direct. 2000 WL 130629, at *4 (Del. Ch. Jan. 27, 2000). The court concluded that, under the unique facts of that

4

case, the purposes for imposing derivative requirements made "no sense." *Id.* at \*4. In particular, the court relied on the fact that the partnership's business was complete, the liquidation sale was over, the only two parties to the partnership were now adversaries, the only remaining claims challenged the conduct of the general partner in the final sale transaction, not any ongoing conduct, and the claims had already survived one summary judgment motion. *Id.*

According to Gimaex, the Magistrate Judge erred in finding *Cencom* "unconvincing" because a Third Circuit decision, *Winer Family Trust v. Queen*, declined to extend *Cencom* to the corporate context. (D.I. 32 at ¶ 17). *Winer Family Trust* is not alone. In *Metropolitan Life Insurance v. Tremont Group Holding, Inc.*, the Delaware Court of Chancery declined to apply *Cencom* to a limited partnership still in the process of winding-up. 2012 WL 6632681, at \*11 (Del. Ch. Dec. 20, 2012). The court noted that in *Cencom* the limited partnership had already been liquidated, which was not the case in *Metropolitan Life*. The court concluded that there was no basis to expand *Cencom* to entities in the process of winding-up because those entities were still "relevant as distinct legal creatures for the purpose of resolving the final claims between the disputing parties." *Id.* (internal punctuation omitted). Here, the Joint Venture still exists and has the power to address Gimaex's derivative claims. *See* 6 *Del. C.* § 18-803 (stating that until the filing of a certificate of cancellation, a person winding up the affairs of a dissolved limited liability company may, on behalf of the limited liability company, prosecute and defend suits).

In addition, later decisions from the Delaware Court of Chancery have stated that *Cencom* is "limited to its own unique set of facts." *Agostino v. Hicks*, 845 A.2d 1110, 1125 (Del. Ch. 2004). Although this case, like *Cencom*, involves a dissolved entity, the facts are not the same. The liquidation sale is not over, and the remaining claim is not challenging Spartan's conduct in the

5

final sale transaction. For these reasons, the Magistrate Judge did not err in finding *Cencom* "unconvincing."

I find equally unconvincing the other cases Gimaex cites in support of its argument that Delaware has an equitable exception to classifying claims as derivative. (D.I. 32). To start, *Dowling v. Narragansett Capital Corp.* was decided by a Rhode Island court, involved a Rhode Island corporation, and did not apply or look to Delaware law on the issue of whether the claims were direct or derivative. In addition, the courts in both *Dowling* and *ML-Lee* found an injury personal to the plaintiff that was not shared by the entire entity. *See Dowling v. Narragansett Capital Corp.,* 735 F. Supp. 1105, 1113 (D.R.I. 1990) (finding that any damages from the sale of the corporation were sustained by only the minority shareholders and not by the corporation or all shareholders because the majority shareholders actually profited from the sale); *In re ML-Lee Acquisition Fund, LP Sec. Litig.*, 848 F. Supp. 527, 562 (D. Del. 1994) ("Plaintiffs are not merely alleging that the Funds partnerships were injured by Defendants' conduct, rather that the Funds were created to serve Defendants' purpose of defrauding Plaintiffs").

Accordingly, I adopt the Report's recommendation that the claims for breach of contract and breach of the implied covenant of good faith and fair dealing are derivative claims, and therefore, should be dismissed for lack of diversity jurisdiction.

### B. Spartan's Objections to the Report

Spartan raises three objections to the Report, all of which I overrule. First, Spartan relies on *ExxonMobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) to argue that the entire action must be dismissed if the Court finds that even one claim lacks diversity jurisdiction. (D.I. 33 at 3-4). *ExxonMobil*, however, does not support Spartan's contention.

6

In *ExxonMobil*, the Supreme Court held that, where other elements of original jurisdiction are present and at least one named plaintiff in a class action satisfies 28 U.S.C. § 1332(a)'s amount-in-controversy requirement, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over the claims of other plaintiffs in the same case or controversy, even if those claims are for less than the requisite amount. 545 U.S. at 559. In reaching this conclusion, the Supreme Court noted that it has not applied supplemental jurisdiction to cases where jurisdiction is based on diversity of citizenship because "[i]ncomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere." *Id.* at 554. "Put another way, where a court's original jurisdiction is based on diversity, a court may not exercise supplemental jurisdiction over claims that would destroy diversity." *Polak v. Kobayashi*, 2008 WL 4905519, at *8 (D. Del. Nov. 13, 2008).

Here, the Magistrate Judge did not recommend exercising supplemental jurisdiction over any claims. Instead, she properly retained only those claims where she found there was complete diversity and dismissed those claims that would destroy complete diversity. District courts have routinely retained original jurisdiction over claims where complete diversity exists and dismissed only those claims where complete diversity is lacking. *See, e.g., Polak*, 2008 WL 4905519, at *7 (retaining claims for judicial dissolution and breach of contract where complete diversity existed but dismissing claims for breach of fiduciary duty and unjust enrichment that were derivative).

Second, Spartan argues that that the Magistrate Judge failed to weigh considerations of efficiency, fairness, and judicial economy, as required, before deciding to preserve jurisdiction over some of the claims. (D.I. 33 at 5-6). Spartan has not shown, however, that a district court is required to weigh these considerations when deciding whether to exercise diversity jurisdiction where it properly exists. In *Zambelli*, on which Spartan relies, the Third Circuit addressed for the

7

first time the rule for determining the citizenship of a limited liability company. *Zambelli Fireworks Mfg. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). The parties conceded that under the new rule there was a lack of complete diversity that deprived the Third Circuit of subject matter jurisdiction. *Id.* at 414. In deciding whether to dismiss, the Third Circuit explained that considerations of efficiency, fairness, and judicial economy weighed against dismissal at that late stage in the proceedings, even though the court lacked diversity jurisdiction. *Id.* at 420-21. *Zambelli* is inapplicable here because the Court has diversity jurisdiction over the claims it has retained.

Finally, the Magistrate Judge did not err in finding that that the Joint Venture was only a nominal party with respect to Count I. (D.I. 33 at 7-8). The Magistrate Judge properly concluded that the Joint Venture has "no control of, impact on, or stake" in its winding-down based on the fact that the Joint Venture is equally owned by Gimaex and Spartan, and all decisions relating to the liquidation require unanimous approval from its Board of Directors, which is equally split between Gimaex and Spartan. Spartan does not dispute these facts, only whether there is actual deadlock. I question whether the allegations Spartan makes raise a real factual dispute. Regardless, on a motion to dismiss, "all allegations of jurisdictional fact made by a plaintiff are presumed to be true and all factual disputes are resolved in plaintiff's favor." *Jeffreys v. Exten*, 784 F. Supp. 146, 151 (D. Del. 1992).

Spartan also argues that the Joint Venture has a stake in its winding down, because the dissolved entity still has the power to prosecute and defend lawsuits. (D.I. 33 at 8 (*citing* to 6 *Del. C.* § 18-803)). The ability to participate in litigation, however, does not equate to having a real interest in that litigation. Thus, an entity can be a nominal party in proceedings regarding its dissolution. *See, e.g., Polak v. Kobayashi*, 2008 WL 4905519 (D. Del. Nov. 13, 2008) (finding

8

that limited liability company was a nominal party and not a real party in interest in suit over the dissolution of the limited liability company); *Roskind v. Emigh*, 2007 WL 981725, at *2-3 (D. Nev. Apr. 2, 2007) ("In cases where business entities are joined as parties solely for the purposes of dissolution, distribution of assets, or other formal acts, courts have traditionally classified these entities as nominal parties for diversity purposes."). Accordingly, the Report correctly found that the Joint Venture was a nominal party with respect to Count I.

## II. OBJECTIONS TO MEMORANDUM OPINION GRANTING GIMAEX'S MOTION TO EXPEDITE

Spartan raises several objections to the Magistrate Judge's Memorandum Opinion granting Gimaex's motion to expedite Count I. None demonstrate that the Magistrate Judge's decision was clearly erroneous or contrary to the law.

### A. The Proper Standard

Spartan argues that the Magistrate Judge improperly applied the state standard, rather than the federal standard, for granting expedition. As Spartan explains, when the subject matter jurisdiction of the court is based on diversity, then the Federal Rules of Civil Procedure control the resolution of procedural matters. *Simmons v. City of Phila.*, 947 F.2d 1042, 1085 (3d Cir. 1991). However, neither the Federal Rules of Civil Procedure nor the Third Circuit has adopted a standard for deciding whether to expedite a claim.

In *Kone Corp. v. ThyssenKrupp USA, Inc.*, this Court explained that it would expedite discovery if the party seeking expedition showed "good cause," such that the request is "reasonable" in light of the relevant circumstances. 2011 WL 4478477, at *4 (D. Del. Sept. 26, 2011). Similarly, under Delaware state law, the court "does not set matters for an expedited hearing or permit expedited discovery unless there is a showing of good cause why that is necessary." *Greenfield v. Caporella*, 1986 WL 13977, at *2 (Del. Ch. Dec. 3, 1986). To show

9

good cause for an expedited hearing, the plaintiff must establish a sufficiently colorable claim and (ii) "a sufficient possibility of a threatened irreparable injury" to justify imposing the extra costs of expedited proceedings. *Giammargo v. Snapple Beverage Corp.*, 1994 WL 672698, at *2 (Del. Ch. Nov. 15, 1994).

Because the state and federal standards are not in conflict, the Magistrate Judge did not act contrary to law in applying a good cause standard. The Magistrate Judge properly found that the complaint set forth a colorable claim regarding purported deadlock (Op. at 8-9), Giamex showed a sufficient possibility of threatened irreparable injury (Op. 9-10), and the request is reasonable considering the narrow focus of discovery (Op. 11).

### B. Colorable Claim

Spartan argues that the Complaint does not set forth a sufficiently colorable claim that the Board of Directors of the Joint Venture are deadlocked over how to wind up its affairs. In determining whether to expedite a claim, a court "need not determine the merits of the case or even the legal sufficiency of the pleadings." *Morton v. Am. Mktg. Indus. Holdings, Inc.*, 1995 WL 1791090, at *2 (Del. Ch. Oct. 5, 1995). Thus, the Magistrate Judge was not clearly erroneous in finding that the following facts set forth a colorable claim of deadlock: the Joint Venture is equally owned by Gimaex and Spartan, management of the Joint Venture is vested in an equal number of directors appointed by Gimaex and Spartan, unanimous board approval is required concerning the wind-up of the Joint Venture, and there is no mechanism for resolving a deadlock as to the windup process. (D.I. 31 at 8).

Spartan claims that the parties' post-dissolution communications do not demonstrate deadlock, but flexibility and a willingness to negotiate further. (D.I. 37 at 6). To weigh the

10

evidence in the manner that Spartan requests would result in this Court determining the merits of the case when it need not do so.

### C. Irreparable Harm

Spartan raises a variety of arguments that the Magistrate Judge erred in finding irreparable harm. First, Spartan claims that expedition will not ameliorate Gimaex's harm because the deadlock cannot continue indefinitely and, until it does end, Gimaex must remain a member of the Joint Venture. (D.I. 37 at 9). I do not agree that the ability to obtain relief sooner rather than later provides no benefit, even if the party must endure harm in the interim.

Next, Spartan argues that the depreciation of assets does not constitute irreparable harm, particularly because depreciation can be remedied by money damages. The Magistrate Judge, however, did not rely solely on the depreciation of assets to find a sufficient possibility of threatened irreparable injury. She considered the totality of the circumstances which included allegations that the deadlock will continue indefinitely, the Joint Venture's assets will depreciate, the parties will be forced to remain members in a company they mutually decided to dissolve, and Spartan remained in possession of the Joint Venture's assets, including property belonging solely to Gimaex. In addition, even if a claim for depreciation of assets can remedied by money damages, that is not the claim for which Gimaex seeks expedition. Rather, Gimaex is seeking expedition only of Count I, which requests the appointment of a receiver.

Finally, Spartan claims that the Memorandum Opinion improperly relied on information submitted by Gimaex after briefing was closed. Spartan mischaracterizes the use of information that appeared in only two footnotes, as the Magistrate Judge did not rely on the information in reaching her conclusions. The first footnote was an addendum to a summary of the proposals the parties had exchanged on the wind down of the Joint Venture. (D.I. 31 at 8 n. 47). That footnote

11

acknowledged that the parties continued to exchange and reject proposals. The second footnote appears after a sentence stating that Gimaex insists, among other things, that the Joint Venture's assets will depreciate. That footnote states that Spartan acknowledged in one of its letters that the assets had depreciated. (D.I. 37 at 10 n. 51). Both footnotes simply noted the existence of facts consistent with the facts already properly before the Magistrate Judge.

### D. Futility

Finally, Spartan argues that expediting Count I is futile. According to Spartan, the parties' dueling claims are assets of the Joint Venture. As a result, any appointment of a receiver now yields no benefit because the receiver cannot complete the wind up of the Joint Venture until those claims are resolved. (D.I. 37 at 11).

This argument has no merit because there are a number of actions pertaining to the wind up of the Joint Venture that a receiver must take before the final distribution of assets. In addition, the receiver will have the power to address any pending litigation as needed and distribute any proceeds from the litigation whenever that time comes. *See, e.g.*, 6 *Del. C.* § 18-805 (stating that a receiver has the power under Delaware law to sue and defend suits on behalf of the company, gradually settle the company's business, discharge or make reasonable provision for the company's liabilities, and distribute any remaining assets).

### III. Conclusion

The Report and Recommendation (D.I. 29) is ADOPTED. Spartan's Motion to Dismiss (D.I. 8) is GRANTED as to Counts III and IV, and DENIED as to Counts I, II, and V. The Memorandum Opinion (D.I. 31) is AFFIRMED. A separate order will be entered.