## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GIMAEX HOLDING, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No.  15-515-RGA-MPT |
| | ) |
| SPARTAN MOTORS USA, INC., | ) |
| f/k/a CRIMSON FIRE, INC., | ) |
| | ) |
| Defendant | ) |
| | ) |
| SPARTAN-GIMAEX | ) |
| INNOVATIONS, LLC, | ) |
| | ) |
| Nominal Defendant. | ) |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On June 19, 2015, Gimaex Holding, Inc. ("Gimaex") filed this action against

Spartan Motors USA, Inc. ("Spartan") seeking appointment of a liquidating

receiver/trustee (Count I) over Spartan-Gimaex Innovations, LLC (the "Joint Venture" or

"Spartan-Gimaex") in which Gimaex and Spartan are the sole and equal members and

which Gimaex characterizes as a "nominal defendant."[1]  Gimaex also seeks damages

---

[1] D.I. 29 at 1-2; D.I. 31 at 1-2; D.I. 1 at ¶ 1.  Gimaex is a Florida corporation with its principal place of business in Florida, and is a 50% member of Spartan-Gimaex. *Id.* at ¶¶ 6-7.  Spartan is a South Dakota corporation, with its registered office in Pennsylvania, and a principal office in Michigan. *Id.* at ¶ 9.  It is the other 50% member of Spartan-Gimaex. *Id.* at ¶ 10.  Spartan is a wholly owned subsidiary of Spartan Motors, Inc. ("Spartan Motors"). *Id.* at ¶ 14.  Spartan-Gimaex is a Delaware limited liability company with is principal place of business in Michigan and has a registered agent and registered office in Delaware. *Id.* at ¶ 12.  Spartan previously moved to dismiss the complaint for lack of subject matter jurisdiction arguing that Spartan-Gimaex

for conversion (Count II), breach of contract (Count III), breach of implied covenant in good faith and fair dealing (Count IV), and tortious interference with business relations (Count V).[2]  On October 30, 2015, a Memorandum Opinion was issued granting Gimaex's motion for expedited proceedings for Count I of the complaint.[3]  On October 14, 2015, this court issued a Report and Recommendation granting Spartan's motion to dismiss for lack of subject matter jurisdiction as to Counts III and IV of the complaint and denying as to Counts I, II, and V.[4]  On December 22, 2015, a Memorandum Opinion by Judge Andrews affirmed this court's earlier Memorandum Opinion and adopted the Report and Recommendation.[5]  On June 17, 2016, this court was advised that Vernon R. Proctor, Esq. was selected by both parties to serve as the liquidating trustee/receiver for the Spartan-Gimaex, effectively resolving Count I.[6]  Currently before the court is Gimaex's motion to dismiss Spartan's counterclaims for lack of supplemental jurisdiction and failure to state a claim under FED. R. CIV. P. 12(b)(6).[7]

## II.    BACKGROUND

On November 8, 2012, Gimaex and Spartan executed a Venture Agreement ("Agreement") creating Spartan-Gimaex, a joint venture, created to combine the complementary skills, technologies, resources, capabilities, and product portfolios of

---

was not a nominal defendant, and, thus, there was a lack of complete diversity between the parties. This court's Report and Recommendation granted in part Spartan's motion to dismiss. See D.I. 29.

[2] D.I. 29 at 1; D.I. 31 at 1-2.
[3] D.I. 31 at 12; D.I. 56 at 2.
[4] D.I. 29 at 16.
[5] D.I. 56 at 13.
[6] D.I. 84.
[7] D.I. 72.

2

Gimaex and Spartan and to develop, manufacture, and distribute products to domestic and international fire service markets.[8] As a fire apparatus manufacturer, Gimaex was to provide its technology for fire extinguishing systems to Spartan to be incorporated in its fire vehicles and subsequently market those vehicles in North America, South America, Asia, and Europe.[9]

Under the Agreement, management of Spartan-Gimaex was vested in a board of directors ("Board"), composed of eight individuals, four of whom were designated by Gimaex and the remainder chosen by Spartan.[10] The Board had the sole and exclusive right, power, and authority to conduct, supervise, and manage the business affairs of Spartan-Gimaex.[11] The Agreement requires Gimaex and Spartan to each "proceed with diligence to provide the services and materials required of them" and support and promote Spartan-Gimaex's projects.[12] Ultimately, Spartan-Gimaex did not achieve any of its goals and projections.[13] On February 19, 2015, Spartan-Gimaex was dissolved by mutual consent.[14]

Article XII of the Agreement provides procedures for winding up, liquidating, and distributing the assets of Spartan-Gimaex upon dissolution, and authorizes the Board to take certain actions, in which unanimous board approval is required.[15] The Agreement contains a procedure for resolving a deadlock prior to dissolution, but does not provide

---

[8] D.I. 29 at 2; D.I. 31 at 2; D.I. 56 at 2; D.I. 16 at 4.
[9] D.I. 29 at 2; D.I. 31 at 2.
[10] D.I. 29 at 2; D.I. 31 at 2.
[11] *Id.*
[12] D.I. 31 at 4; *id.*,
[13] D.I. 29 at 3; D.I. 31 at 4; D.I. 56 at 2.
[14] D.I. 29 at 3; D.I. 31 at 4.
[15] *Id.*

a mechanism for resolving a deadlock among the Board for the wind down process.[16] As of June 17, 2016, both Gimaex and Spartan finally agreed to appoint a liquidating trustee/receiver for Spartan-Gimaex.[17] The parties intend to submit a proposed order, for this court's review and approval, to govern the receivership.[18]

Gimaex's motion to dismiss alleges that Spartan fails to demonstrate that this court has supplemental jurisdiction over its counterclaims.[19] It further asserts that the counterclaims should be dismissed for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6).[20]

## III.    GOVERNING LAW

Gimaex asserts that Spartan's counterclaims are derivative and warrant dismissal for a lack of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).[21] Alternatively, it maintains the counterclaims fail to state a claim upon which relief can be granted.[22] Finally, if Spartan's claims are found to be direct, Gimaex petitions the court to exercise its discretion to decline jurisdiction pursuant to 28 U.S.C § 1367(c) for considerations of fairness, judicial economy, and lack of prejudice to Spartan.[23]

The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and

---

[16] *Id.*
[17] D.I. 84.
[18] *Id.*
[19] D.I. 72.
[20] *Id.*
[21] D.I. 72 at 5.
[22] *Id.*
[23] *Id.*

4

is between citizens of different states.[24] "Diversity jurisdiction does not exist unless

*each* defendant is a citizen of a different State from *each* plaintiff."[25] "For purposes of

determining diversity of citizenship, the citizenship of an LLC is equivalent to all the

states where its members are domiciled . . . ."[26] That Spartan-Gimaex has been

dissolved does not affect its citizenship.  The Third Circuit has found a dissolved

corporation is a nominal party, noting "that when . . . a state statute renders a dissolved

corporation 'sufficiently alive to sue,' the corporation also retains its citizenship for

purposes of diversity."[27]  In this instance, Spartan-Gimaex was dissolved on February

19, 2015.[28]  The Delaware statute that governs the winding up of a limited liability

company provides:

> Upon dissolution of a limited liability company and until the filing of a
> certificate of cancellation as provided in § 18-203 of this title, the persons
> winding up the limited liability company's affairs may, in the name of, and for and
> on behalf of, the limited liability company, prosecute and defend suits, whether
> civil, criminal, or administrative . . . .[29]

Therefore, despite its dissolution, Spartan-Gimaex, is able to sue and retains

---

[24] D.I. 29 at 5; D.I. 56 at 3; 28 U.S.C. § 1332(a)(1).

[25] D.I. 29 at 5; D.I. 56 at 3; *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767
(3d Cir. 1991) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373
(1978) (emphasis in original).

[26] D.I. 56 at 3; *In re PMTS Liquidating Corp.*, 490 B.R. 174, 184 (D. Del. 2013).

[27] D.I. 29 at 5, (citing *Stentor Elec. Mfg. Co. v. Klaxon Co.*, 115 F.2d 268, 271 (3d
Cir. 1940), *rev'd on other grounds*, 313 U.S. 487 (1941)).  As further support, the Third
Circuit cited *Ripalda v. Am. Operations Corp.*, 977 F.2d 1464, 1468 (D.C. Cir. 1992)
("[A] state statute extending the life of a dissolved corporation for the purposes of being
sued also preserves the corporation as a citizen of the state of incorporation for the
purpose of determining diversity citizenship."); *Johnson v. Smithkline Beecham Corp.*,
724 F.3d 337, 358-59 (3d Cir. 2013).

[28] D.I. 56 at 2; D.I. 31 at 4; D.I. 29 at 3.

[29] D.I. 29 at 4; 6 Del. C. § 18-803.

citizenship for purposes of diversity.[30]

When jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.[31] Nevertheless, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon citizenship of real parties to the controversy."[32]

Whether Spartan-Gimaex is a real party in interest depends on whether Spartan's claims are direct or derivative.[33] The issue of whether a claim is direct or derivative "must turn solely on the following questions:  (1) who suffered the alleged harm (the corporation or the suing shareholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[34]  "A direct claim seeks relief for injuries that fall distinctly upon the individual participants in the business association or involve the participants' contractual rights."[35]  "On the other hand, a derivative claim states injury against and seeks relief for a business association as a whole.  Any relief flowing to the association's participants as individuals only comes to them indirectly, by the way of their pro-rata stake in the association."[36]

---

[30] D.I. 29 at 6.

[31] *See Carpet Group Int'l. v. Oriental Rug Importers Ass'n., Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).

[32] D.I. 56 at 3; D.I. 29 at 6; *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d at 767 (quoting *Navarro Sav. Assn. v. Lee*, 446 U.S. 458, 461 (1980).

[33] D.I. 29 at 6; D.I. 56 at 3; *See Polak v. Kobayashi*, 2008 WL 4905519 at *7 (D. Del. Nov. 13, 2008).

[34] D.I. 29 at 6; D.I. 56 at 4; *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

[35] D.I. 29 at 7; D.I. 56 at 4; *In re Cencom Cable Income Partners*, 2000 WL 130629, at *3 (Del. Ch. Jan. 27, 2000).

[36] D.I. 29 at 7; D.I. 56 at 5.

In analyzing a motion to dismiss under FED. R. CIV. P. 12(b)(6), a review of Rule 8(a)(2) is necessary.  It requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  That standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[37]  Thus, to survive a motion to dismiss under Rule 12(b)(6), a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[38]  The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[39]  Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations.[40]  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[41]  A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[42]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in

---

[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009), citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 173 L.Ed.2d 868 (2007).

[38] *Id.* citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007).

[39] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[40] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

[41] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).

[42] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

7

fact)."[43] A complainant is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'"

beyond the "labels and conclusions."[44] Heightened fact pleading is not required: rather

"enough facts to state a claim to relief that is plausible on its face" must be alleged.[45]

The plausibility standard does not rise to a "probability requirement," but requires "more

than a sheer possibility that a defendant has acted unlawfully."[46] Rejected are

unsupported allegations, "bald assertions," or "legal conclusions."[47] Further, "the tenet

that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions."[48] Moreover, "only a complaint that states a plausible

claim for relief survives a motion to dismiss," which is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."[49]

Well-pled facts which only infer the "mere possibility of misconduct," do not show that

"the pleader is entitled to relief," under Rule 8(a)(2).[50] "When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement for relief."[51]

---

[43] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 449 F.3d 227, 234 (3d Cir. 2007).

[44] *Twombly*, 550 U.S. at 555.

[45] *Id.*

[46] *Iqbal*, 129 S. Ct. at 1949.

[47] *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).

[48] *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

[49] *Id.* at 1950.

[50] *Id.*

[51] *Id.*

8

## IV.   DISCUSSION

Under the terms of the Agreement, the parties agreed "to submit to the exclusive jurisdiction and venue of the United States District Court, District of Delaware, in connection with any claim or controversy arising out of this Agreement," and if this court would not accept jurisdiction, then the jurisdiction of the Delaware Court of Chancery.[52] However, the parties' Agreement cannot vest this court with subject matter jurisdiction over Spartan's claims.[53]  It is whether Spartan has met its burden of proving this court has supplemental jurisdiction by bringing direct counterclaims against Gimaex, the first ground upon which Gimaex bases its motion to dismiss, that determines whether this court has supplemental jurisdiction.[54]

Gimaex first contends Spartan's counterclaims brought on behalf of the Joint Venture are derivative, since the counterclaims "do not 'derive from a common nucleus of operative facts'" and, consequently, this court lacks supplemental jurisdiction under 28 U.S.C. § 1367(a).[55]

In determining whether diversity citizenship exists, "a court must first identify the primary issue in controversy and then determine whether there is a real dispute by

---

[52] D.I. 29 at 6; D.I. 16 at 3; D.I. 1-1 at ¶ 13.09.

[53] D.I. 29 at 7; *See, e.g. Bd. of Educ. of Appoquinimink Sch. Dist. v. Johnson*, 543 F. Supp. 2d 351, 354 (D. Del. 2008) ("It is well settled that an admission or consent to jurisdiction is insufficient to vest a federal court with proper subject matter jurisdiction over a plaintiff's claims.") (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)); *Ins. Corp. of Ireland*, 456 U.S. at 702 ("[N]o action of the parties can confer subject matter-jurisdiction upon a federal court.  Thus, the consent of the parties is irrelevant . . . .") (citation omitted).

[54] D.I. 29 at 7.

[55] D.I. 72 at 5.

9

opposing parties over that issue.[56]  "[T]he 'citizens' upon whose diversity a plaintiff

grounds jurisdiction must be real and substantive parties to the controversy."[57]  "Thus, a

federal court must disregard nominal or informal parties,"[58] and the court can base its

jurisdiction only upon the citizenship of parties with "a real interest in the litigation."[59]

The court agrees that the primary issue is the purported derivative counterclaims

which Spartan asserts.[60]  Gimaex argues that allowing Spartan's counterclaims would

destroy diversity jurisdiction between Gimaex, Spartan, and the Joint Venture because

Gimaex and the Joint Venture are 'citizens' of the same state.[61]  Gimaex states that the

relief Spartan seeks, including claims for breach of contract, promissory estoppel,

misappropriation of trade secrets, and unfair competition are derivative claims against

Spartan-Gimaex.[62]  As such, Gimaex contends that allowing these counterclaims would

destroy jurisdiction over the parties' chosen venue.[63]  Furthermore, Gimaex maintains

no supplemental jurisdiction exists under § 1367(c) in the absence of a common

nucleus of operative facts.[64]  If Spartan's claims are found to be direct, Gimaex petitions

the court to exercise its discretion to decline jurisdiction pursuant to § 1367(c) based on

---

[56] *Employers Ins. of Wasusaue v. Crown Cork & Seal Co.*, 942 F.2d 862, 864 (3d Cir. 1991); *see also Polak II*, 2008 WL 4905519, at *7 (In determining whether there is a real dispute by opposing parties, "the court is to realign the parties according to their substantive interests in the litigation.").

[57] *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-461 (1980).

[58] *Id.* at 461.

[59] *Bumberger*, 952 F.2d at 767 (citing *Wolff*, 768 at 645).

[60] D.I. 72 at 5.

[61] D.I. 1 at ¶ 1.

[62] D.I. 72 at 5.

[63] *Id.*

[64] *Id.*

fairness, judicial economy, and lack of prejudice to Spartan.[65]  Alternatively, Gimaex

argues that Spartan's counterclaims fail under Rule 12(b)(6).[66]

Spartan argues it met its burden of proving supplemental jurisdiction under

§ 1367(a) and sufficiently pled its claims.[67]

## A.    DIRECT OR DERIVATIVE CLAIMS

With respect to Count I, for Gimaex's alleged breach of contract claim, Spartan is

limited to only those claims that directly affect itself and not those that affect it due to its

ownership of the Joint Venture.  The court must determine whether the Joint Venture is

a real party in interest with respect to the breach of contract claims.  The court finds that

the Joint Venture is a real party in interest in regards to some specific claims, and a

nominal party as to others.

The alleged breach of Paragraph 3.01(d), Diligence and Support Provision, by

Gimaex to "proceed with diligence to provide the services and materials"[68] for each

project plan, would only directly harm the Joint Venture and any benefits inuring to

Spartan are indirect because failure to adhere to this provision would increase each

particular project's cost, thus affecting the Joint Venture's expenses directly and

Spartan only indirectly.  Nominal parties are "[t]ypically, . . . those . . . [who] . . . ha[ve]

no control of, impact on, or stake in the controversy.'"[69] Therefore, the Joint Venture is a

---

[65] *Id.*

[66] *Id.*

[67] D.I. 68 at 6-9.

[68] D.I. 36 at ¶ 84.

[69] D.I. 29 at 12; *Weston v. Progressive Commercial Holdings, Inc.*, C.A. No. 10-980, 2011 WL 231709, at *2 (D. Del. Jan. 24, 2011) (alterations in original) (quoting *Lincoln Property v. Roche*, 546 U.S. 81, 92 (2005)).

real party in interest in relation to this specific provision.

Any alleged breach of Paragraph 5.10(c), At-Cost Provision, by Gimaex for failure to "supply its content in respect of each project"[70] only injured the Joint Venture by increasing the total cost of each project undertaken.  A failure by Gimaex to abide by this provision of the Agreement increases the final cost of each project thereby effecting the sale price of each project.  The increase in the sale price only effects the Joint Venture by forcing it to sell at a higher price, potentially effecting the marketability of a specific project.  Again, the Joint Venture is a real party in interest with respect to this specific provision because it has control of, an impact on, or a stake in the controversy by being the final arbiter of sale price.

Paragraph 6.02 is the Payment Provision, which requires Gimaex to "pay fifty percent of the costs incurred by Spartan and Gimaex" for the development phase of each project undertaken by the Joint Venture, benefits each Venturer.[71]  It manifests the agreement between Spartan and Gimaex related to the sharing of expenses.  This provision is a direct claim against Gimaex for withholding its contractual obligation to bear one-half of the total costs of developing each project of the Joint Venture,  and directly benefits Spartan.[72]

As to the purported breach of Paragraph 4.06, Exclusivity Provision, by Giamex for competing with, or undertaking conduct (other than through the Joint Venture), any business initiative in a project's territory is derivative because Gimaex would be

---

[70] D.I. 36 at ¶ 85.
[71] D.I. 1-1 at ¶ 6.02
[72] D.I. 36 at ¶ 86.

competing with the Joint Venture itself, not Spartan, and therefore harms the Joint

Venture and any relief would flow to the it.  Paragraph 4.06 forbids each Venturer from

competing in any ". . . business initiative in a Project's Territory which is the same or

materially similar to such Project."[73]  In each Project Plan, the "territory" for each project

is outlined in greater detail, which includes North America or areas wanting emergency

fire vehicles compliant with North American standards.[74]  Gimaex may compete with the

Joint Venture in areas other than those specified in each Project Plan, under the

Exclusivity Provision of the Agreement.[75]  Spartan, however, also claims that Gimaex

breached the Exclusivity Provision and created premature, unfair competition against

the Joint Venture which consequently eroded the value of its assets.[76]  This claim is

derivative because it specifically notes that the Joint Venture suffered the injury and

would benefit from any recovery for the alleged breach.  Spartan did not suffer harm

distinct from the damages that could flow to the Joint Venture.  Therefore, the Joint

Venture is not a nominal party with respect to this claim.

The purported breach of Paragraph 3.03(b), the Confidentiality Provision, is a

direct claim against Gimaex for allegedly disclosing Spartan Confidential Information,

Technical Information, and Background Intellectual Property to Smeal.  Confidential

Information is defined as "information of or in respect of a Venturer or the [Joint

Venture] not generally known to the public" and may include, for example, "notes,

analyses, studies, or other physical or electronic documents, know-how, and unique

---

[73] D.I. 1-1 at ¶ 4.06.
[74] D.I. 36 at ¶¶ 88-90.
[75] D.I. 1-1 at ¶ 4.06.
[76] D.I. 68 at 15.

13

trade procedures."[77]  Confidential Information also includes Technical Information and "all information relating to processes, services, engineering, marketing and selling of products which the *disclosing party* considers proprietary."[78]  Technical Information is defined as "all know-how, drawings, designs, diagrams, formulas, and other technical information relating to the design, fabrication, assembly, marketing and/or use of a product which may be of commercial interest to a Venturer."[79]  Background Intellectual Property is defined as "those IP rights existing and owned by a Venturer . . . or subsequently independently developed by such Venturer, other than in the course of undertaking a Project."[80]  After termination of a project by the Joint Venture, Background IP "will revert to the Venturer which licensed it to the [Joint Venture]."[81]  Spartan alleges Gimaex has disclosed, or will inevitably disclose, to Smeal such Confidential Information and Background Information which violates the Confidentiality Provision, and thus, is a direct claim because Spartan suffers harm from this disclosure and any recovery inures directly to it and not the Joint Venture.

In its claim for breach of the Confidentiality Provision, Spartan also includes Foreground Intellectual Property as having been, or inevitably being, disclosed to Smeal.[82]  Foreground Intellectual Property is defined by the Agreement as "those IP rights developed in the course of undertaking a Project by either Venturer or jointly by

---

[77] D.I. 36-8, Exhibit B.
[78] *Id.* (emphasis added).
[79] D.I. 36-8 at Exhibit B.
[80] D.I. 36-8 at Exhibit B.
[81] D.I. 36-8 at ¶ 3.02(a)(i).
[82] D.I. 36 at ¶ 102.

14

both Venturers."[83]  The Agreement recognizes that "[a]fter the Termination Date,
Foreground IP will be transferred to the Venturers, and thereafter may be used and
applied by each Venturer on a worldwide, nontransferable basis, but requiring the
payment of an agreed-upon royalty to the other Venturer . . . ."[84]  In conclusion,
Spartan's claim for breach of the Confidentiality Provision is a direct claim in regards to
the alleged disclosure of Confidential Information, Technical Information, Background
Intellectual Property, and Foreground Intellectual Property because Spartan suffers
directly from such disclosure and any recovery inures to it.

Finally, Paragraphs 3.03(c) and 10.01(b), the Dealer Non-Solicitation/Non-
Compete and the Competitor Notice Provisions, purportedly breached by Gimaex for
soliciting or transacting business with Smeal, a dealer of Spartan, and for failure to give
required notice is a direct claim because those obligations flowed directly to Spartan
and explicitly continue for four years after the dissolution date.[85]  The language of the
Dealer Non-Solicitation/Non-Compete provision clearly intends to protect the Joint
Venture as well as Spartan and Gimaex after the Joint Venture is dissolved.[86]
Therefore, this specific claim under Count I is a direct claim.

In conclusion, this court finds Count I, breach of contract, has both direct and
derivative claims.  The direct claims are for breach of the Payment, Confidentiality, and
the Dealer Non-Solicitation/Non-Compete provisions for which the court has
supplemental jurisdiction.  The claims found to be indirect are for breach of the

---

[83] D.I. 36-8 at Exhibit B.
[84] D.I. 36-8 at ¶ 3.02(a)(ii).
[85] D.I. 1-1 at ¶ 3.03(c).
[86] *Id.*

Diligence and Support, At-Cost, and Exclusivity Provisions, and therefore, derivative for which no supplement jurisdiction exists.

With respect to Count II, promissory estoppel, whether the Joint Venture is the real party in interest is equally relevant. The court finds that the Joint Venture is a nominal party regarding this count because Spartan has sufficiently alleged it is the only party injured by Gimaex and any relief inures only to Spartan.[87]  In its counterclaim, Spartan alleges any injury and resulting relief falls distinctly upon it.[88]  Spartan claims the alleged promise was made in addition to the Agreement and separate from the project plan.[89]  Spartan has demonstrated that any promise or representation by Gimaex involves Spartan's contractual rights, not those of the Joint Venture.[90]

With respect to Count III, misappropriation of trade secrets, the court finds that the Joint Venture is a real party in interest because Spartan asserts any relief flows directly to the Joint Venture, and not to Spartan.[91]  Specifically, it notes that "*Spartan-Gimaex* has sustained and/or is threatened with injury . . . for which *Spartan-Gimaex* has no adequate remedy at law, thereby entitling *Spartan-Gimaex* to injunctive relief."[92] Spartan continues by alleging "*Spartan-Gimaex* has incurred damages . . ."[93] and "*Spartan-Gimaex* is entitled to recover its actual damages . . . ."[94]  Such language clearly indicates a derivative claim not arising from a common nucleus of operative

---

[87] D.I. 36 at 112-117.
[88] *Id.*
[89] D.I. 68 at 17-18.
[90] *Id.*
[91] D.I. 36 at 118-130.
[92] D.I. 36 at ¶ 127 (emphasis added).
[93] *Id.* at ¶ 128 (emphasis added).
[94] *Id.* at ¶ 130 (emphasis added).

facts, which should be dismissed pursuant to 28 U.S.C. § 1367(a) to maintain diversity.

Regarding Count IV, unfair competition, the Joint Venture is a nominal party because Spartan claims Gimaex caused harm to Spartan, who then is entitled to any remedy.[95] Spartan alleges Gimaex is profiting from the work Spartan undertook to promote not only Spartan-Gimaex, but also, Gimaex.[96] It further claims Gimaex is profiting from the confidential information Spartan compiled about market demand in North America for products and the improvements needed for Gimaex's respective products to be sellable in this market.[97] Such confidential information would qualify as Background Intellectual Property under Paragraph 3.02 of the Agreement and is owned exclusively by Spartan.[98] Thus, Spartan suffers the alleged harm and any recovery flows direct to it.

In conclusion, the court has supplemental jurisdiction over the Payment, Confidentiality, and Non-Solicitation/Non-Compete Provisions of Count 1, and Counts II and IV, but not the Diligence and Support, At-Cost, and Exclusivity Provisions of Count 1 and Count III. The court denies Gimaex's request under 28 U.S.C. § 1367(c) to decline jurisdiction.

## B.    MOTION TO DISMISS[99]

Under the standards set forth under Rules 8(a)(2) and 12(b)(6), Spartan's counterclaims in Count II of promissory estoppel fail to meet the requirements of these

---

[95] D.I. 36 at 126-137.

[96] *Id.*

[97] D.I. 36 at ¶ 133.

[98] D.I. 1-1 at ¶ 3.02(a)(i)

[99] The court need not address Count III under Gimaex's motion to dismiss because it previously found no supplemental jurisdiction exists over that Count.

17

Rules, while Spartan's counterclaims in Counts I and IV of breach of contract and unfair competition, respectively, survive Gimaex's motion to dismiss for failure to state a claim. In making this determination, the court examines whether sufficient facts have been pled.

Regarding Count I, breach of contract, Gimaex argues that Spartan has not adequately alleged a breach of an obligation imposed under the Agreement.[100]  Gimaex only addresses Spartan's claims for breach of the Payment, Exclusivity, and Confidentiality Provisions.[101]  Gimaex contends Spartan failed to plead facts demonstrating any condition precedent obligating Gimaex to adhere to the Payment Provision.[102]  Relating to the Exclusivity Provision, Gimaex insists that after dissolution of the Joint Venture, the Exclusivity Provision is no longer in effect since neither party bargained for the provision to continue through or after wind-up.[103]  Lastly, Gimaex avers the alleged breach of the Confidentiality Provision is merely conclusory.[104] Despite Gimaex's contentions, this court finds that Spartan has pled sufficient factual information under Rules 8(a) and 12(b)(6) to withstand a motion to dismiss for failure to state a claim.[105]

With respect to Count II, promissory estoppel, Gimaex argues that Delaware common law and case law preclude Spartan from asserting a claim based on a theory

---

[100] D.I. 59 at 15; D.I. 72 at 10.
[101] D.I. 59 at 15-18; D.I. 72 at 10-11.
[102] D.I. 59 at 15-16; D.I. 72 at 10-11.
[103] D.I. 59 at 16; D.I. 72 at 11.
[104] D.I. 59 at 17.
[105] D.I. 36; D.I. 68 at 13-16.

of promissory estoppel and a breach of contract claim covering the same matter.[106]
This court agrees.  Delaware law precludes a party from bringing a "promissory
estoppel claim based on promises that contradict the terms of a valid, enforceable
contract."[107]  Spartan has done just that.[108]  Spartan alleges Gimaex's Board
representatives approved a commitment by the Joint Venture, among other actions, to
manufacture a Spartan-built RXO vehicle to display at the Fire-Rescue International
trade show in August 2014.[109]  Spartan also notes that Gimaex agreed to pay fifty
percent of the costs incurred by Spartan in relation to this endeavor, but refused to
contribute its share of the costs after Spartan built and demonstrated the vehicle at the
trade show.[110]  These factual allegations are identical to Spartan's breach of contract
claim.[111]  As a result, Gimaex's motion should be granted as to Spartan's promissory
estoppel claim.

As to Count IV, unfair competition, Gimaex argues that Spartan has not alleged
any actual unfair action due to Gimaex's conduct which prevented Spartan from earning
revenue.[112]  Under Delaware common law, there is no precise definition of unfair
competition; the only requirement is that enough facts be pled to aver that Gimaex
committed a tort and thus wrongfully competed with Spartan.[113]  Based on this

---

[106] D.I. 72 at 12-13.
[107] *Weiss v. Northwest Broad., Inc.*, 140 F.Supp.2d at 345 (D. Del. 2001); see also *4C, Inc. v. Pouls*, 2014 WL 104732, at *7 (D. Del. Mar. 5, 2014).
[108] *Compare* D.I. 36 at Count I, ¶¶ 86-87 *with id.* at Count II, ¶¶ 114-116.
[109] D.I. 36 at ¶ 38.
[110] D.I. 36 at ¶¶ 36-41.
[111] D.I. 36 at ¶¶ 82-87; D.I. 36 at ¶¶ 112-117.
[112] D.I. 72 at 13.
[113] *International Business Machines Corp. v. Domdisco, Inc.*, 1991 WL 269965, at *15 (Del. Super. Ct. Dec. 4,1991).

standard, Spartan has pled sufficient factual allegations, beyond mere speculation and bald assertions, demonstrating entitlement to relief due to Gimaex's partnership with Smeal.[114]   Therefore, Spartan meets its pleading threshold, and Count IV should not be dismissed.

## V.    CONCLUSION

For the reasons contained herein, it is recommended that:

(1) Gimaex Holding, Inc.'s motion to dismiss for lack of supplemental jurisdiction (D.I. 58) be GRANTED as to the Diligence and Support, At-Cost, and Exclusivity Provisions of Count I, and Count III of the complaint and DENIED as to the Payment, Confidentiality, and Non-Solicitation/Non-Compete Provisions of Count I, and Counts II and IV.

(2) Gimaex Holding Inc.'s motion to dismiss for failure to state a claim upon which relief can be granted (D.I. 58) be GRANTED as to Count II and DENIED as to Counts I and IV.

(3) Gimaex Holding, Inc.'s request for this court to exercise its discretion to decline jurisdiction (D.I. 58) is DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. Del. 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for

---

[114] D.I. 36 at ¶¶ 132-137.

Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is

available on the Court's website, www.ded.uscourts.gov.


Dated: July 28, 2016                    /s/ Mary Pat Thynge
                                        UNITED STATES MAGISTRATE JUDGE